**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**--------------------------------------------------------X**
The Mintz Fraade Law Firm, P.C.,

                                 Plaintiff,                       Case No.: 1:19-cv-10236

           -against-                                             (JMF)

Frank Brady and Life's Time Capsule Services, Inc.,

                              Defendants.
**--------------------------------------------------------X**

<br>

### Memorandum of Law in Support
### of
### Plaintiff The Mintz Fraade Law Firm, P.C.'s
### Motion for Leave to File an Amended Complaint

<br><br>

Law Offices of Kramer, LLC
260 Madison Avenue, 16th Floor
New York, NY 10016
Tel. No. 212-490-1616

# TABLE OF CONTENTS

_____

PAGE

Table of Contents…………………………………………….          i

Table of Authorities………………………………….………          ii

Statement………………………………………………….…          1

    Point I: Plaintiff Is Entitled to Amend the Complaint…          1

    Point II: Plaintiff May Assert Alter Ego Liability
        of Defendant Frank Brady in the First,
        Second and Third Claims for Relief…………          7

    Point III: The Proposed Amended Complaint States
        a Claim for Relief against Brady for
        Promissory Estoppel………………….……          12

    Point IV: The Proposed Amended Complaint States
        a Claim for Relief against Brady for
        Fraudulent Misrepresentation………………          15

Conclusion…………………………………………………….          20

TABLE OF AUTHORITIES
_____

**<u>STATUTES</u>**:

Fed. R. Civ. P. 15(a)(2)……..……………………………………          1

Fed. R. Civ. P. 16(b)(4)…………………………………..,…….          1, 2

Fed. R. Civ. P. 54(c)………………………………………..          5

**<u>CASES</u>:**                                                        **PAGE**

*26/32 LLC v. Vallat, Inc.*,
      No. 158825/2014, 2015 BL 278209, *4
      (Sup. Ct. N.Y. Co. 2015)…………………………………..          9

*ABN AMRO Bank, N.V. v. MBIA Inc*.,
      17 N.Y.3d 208, 928 N.Y.S.2d 647 (2011)……………….          7, 8

*Agai v. Antoniou,*
      527 B.R. 71, 75 (Bankr. E.D.N.Y. 2015)……………….          11

*Arcadian Phosphates, Inc. v. Arcadian Corp.,*
      884 F.2d 69  (2d Cir. 1989)………………………….…….          12

*Bartle v. Home Owners Cooperative,*
      309 N.Y. 103 (N.Y. 1955)……………………………...          9

*Billy v. Consolidated Mach,*
      51 N.Y.2d 152 (N.Y. 1980)...........................................          9

*Emerson Elec. Co. v. Holmes,*
      16-CV-1390, at *7 (E.D.N.Y. Aug. 11, 2020)…………..          11

*Epperson v. Entertainment Express, Inc.,*
      242 F.3d 100 (2d Cir. 2001)……………………….…….          11

*Green* v. *Covidien LP*,
  18 Civ. 2939 (PGG), at *14 (S.D.N.Y. Aug. 30, 2019)…     17
.

*Kassner v. 2nd Avenue Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007)……………….………     2

Matter of Morris v. New York State Dept. of Taxation and Fin.,
  82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993)…………...     8-10

*McBeth* v. *Porges*, 15-CV-2742 (JMF)
  (S.D.N.Y. Nov. 15, 2018)………………………     2

*Parker v. Columbia Pictures Industries*,
  204 F.3d 326, 339 (2d Cir. 2000)………………….     2

*Port Chester Elec. v. Atlas,*
  40 N.Y.2d 652, 653 (N.Y. 1976)…………………     9

*Powers v. Ostreicher,*
  824 F. Supp. 372, 376-77 (S.D.N.Y. 1993)……………     16

*Stevelman v. Alias Research Inc.,*
  174 F.3d 79 (2d Cir. 1999)……………………..     17

*Tap Holdings, LLC* v. *Orix Finance Corp.*,
  109 A.D.3d 167, 970 N.Y.S.2d 178 (1st Dep't 2013)…..     8

*The Indep. Order v. Donald, Lufkin Jenrette,*
  157 F.3d 933 (2d Cir. 1998)……………………     16

*TNS Holdings v. MKI Sec. Corp.,*
  243 A.D.2d 297, 663 N.Y.S.2d 144 [1st Dept. 1997]…..     8

*Walkovszky v. Carlton,*
  29 A.D.2d 763 (N.Y. App. Div. 1968)…………………     9

*Wm. Passalacqua Builders* v. *Resnick Developers*,
  933 F.2d 131 (2d Cir. 1991)…………………….......     9

## Statement

This memorandum of law is submitted in support of Plaintiff's motion, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, for an order granting Plaintiff leave to file an amended complaint.

For the convenience of the Court, the following parties and documents will be referred to herein, as follows:

Plaintiff, The Mintz Fraade Law Firm, P.C., shall be referred to as "MF;"

Defendant, Frank Brady, shall be referred to as "Brady;"

Defendant, Life's Time Capsule Services, Inc., shall be referred to as "LTCP;"

The Declaration of Alan P. Fraade, dated October 8, 2020, submitted in support of Plaintiff's motion for an order granting Plaintiff leave to file an amended complaint, shall be referred to as the "Fraade Declaration"); and

All lettered "Exhibits" shall refer to exhibits attached to the Fraade Declaration.

In order to avoid repetition, the Court is respectfully referred to the Fraade Declaration for the facts of this matter.

## POINT I

### Plaintiff Is Entitled to Amend the Complaint.

It is acknowledged that the Scheduling Order, dated February 12, 2020, provides that this motion be subject to the "good cause" standard in Fed. R. Civ. P. 16(b)(4). Rule 16(b)(4) provides that "A schedule may be modified

only for good cause and with the judge's consent."

The Second Circuit, in *Kassner v. 2nd Avenue Delicatessen Inc.*, 496

F.3d 229, 244 (2d Cir. 2007), clarified good cause, as follows:

> On remand, the district court must exercise its discretion under Rule 16(b) to determine whether the scheduling order should be modified so as to allow an amended complaint. According to the principles we discussed in *Parker*, 204 F.3d at 339-40, the primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.

The instant application represents MF's first application to amend the

complaint.  This is not an instance where the requested amendment is a second

or third amendment or an amendment on the eve of trial.  See, *McBeth* v.

*Porges*, 15-CV-2742 (JMF) (S.D.N.Y. Nov. 15, 2018) (where the court denied

an application for a third amended complaint made in connection with the

preparation of  the joint pretrial statement).

In the instant action, the scheduling order was dated February 12, 2020

and provided for a March 13, 2020 deadline for filing motions to amend

pleadings.  At that time, we were already in the midst of the Co-vid 19

pandemic.  Discovery had not even commenced and a mediation before

Magistrate Judge Fox had been ordered.  The mediation concluded in July

2020.   In a joint letter motion to the Court, dated August 21, 2020, the Court was advised that MF intended to make this motion, and Defendants advised that they would oppose (ECF Document Nos. 40 and 41).   Discovery has not been completed and as set forth in the Court's Order dated August 24, 2020, "the deadline for fact discovery is EXTENDED, but for now only until October 14, 2020." (ECF Document No. 41).   Furthermore, the Proposed Amended Complaint does not seek to add additional parties, nor will the amended pleading delay this litigation.

Additionally, Defendants' counsel wrote to the Court on October 7, 2020, indicating that Defendants' counsel would be making an application to be relieved as counsel for the failure of Defendants to pay their legal fees and would be seeking an extension of the discovery deadlines (Fraade Declaration, Para. 8).   Upon such a motion being granted, it would be expected that Defendants would receive a short stay of proceedings to enable Defendants to obtain new counsel.   Then, new counsel would likely complete Defendants' obligations to produce documents and conduct a deposition of MF. MF already conducted a deposition of Defendants.   Accordingly, for this reason, alone, MF's motion for leave to file an amended complaint will not prejudice Defendants or delay this action (Fraade Declaration, Para. 8).

**First, Second and Third Claims for Relief**

MF seeks to amend the First, Second and Third Claims for Relief (breach of contract, quantum meruit and unjust enrichment, respectively, to assert alter ego liability against Brady. As stated in the Fraade Declaration, Para. 6, although MF suspected that Brady was treating LTCP as an extension of himself, it could not be sure until it requested the bookkeeping and accounting journals and entries to determine if Brady and LTCP accounted for the numerous, 21 separate payments made by Brady or entities he controlled for legal work rendered on behalf of LTCP. Since Defendants have refused to provide such bookkeeping and accounting journals and entries, MF now feels confident that Brady never accounted for them. More importantly, at Brady's deposition just held on September 29, 2020 (Fraade Declaration, Para. 6), Mr. Brady admitted that he may have accounted for only a few of those payments in the books of LTCP. MF would not seek to pierce the corporate veil prior to having sufficient evidence.

Additionally, assets acquired by LTCP and reflected in the filings of LTCP, were removed from LTCP, apparently at Brady's whim, without any consideration (Fraade Declaration, Para. 6). Two corporations, Angry Anemal, LLC and Boca Bel Toro de Corrillo, S.A. d/b/a Costa Rica Water

Company were included as wholly owned subsidiaries in LTCP's disclosure documents filed with OTC Markets for the annual report for 2017 and first quarter of 2018, as well as a business plan for LTCP prepared by Brady, and were omitted from the OTC Market filing for the second quarter of 2018 and subsequent period, without explanation (Fraade Declaration, Para. 6). Although MF was counsel to LTCP at the time, Brady insisted that those entities not be included as subsidiaries, in spite of MF's protests.  (Fraade Declaration, Para. 6.)

Furthermore, as stated in POINT II, below, piercing the corporate veil is not a separate claim for relief, but represents more of a remedy, which may be asserted at any time. Additionally, remedies may be awarded at trial, whether or not pled (Fed. R. Civ. P. 54(c); see, *Id*.).

Moreover, there will be no prejudice to MF, as depositions in this matter have just been commenced and all documents found in the possession of MF related to LTCP and Brady have already been provided and the deposition of MF is being scheduled (Fraade Declaration, Para. 7).

Likewise, the Proposed Amended Complaint seeks to increase the damages from "in excess of $240,000" to "$501,586" (Fraade Declaration, Para. 5).  Similar to piercing the corporate veil, the Court could increase the damages at trial, pursuant to Fed. R. Civ. P. 54(c).  Accordingly, an

amendment increasing the ad damnum is appropriate at this time.

**Proposed Sixth and Seventh Claims for Relief**

The proposed Sixth Claim for Relief, against Brady, is based upon promissory estoppel. This claim involves no additional facts or contentions not already disclosed in the litigation, and only represents an additional theory of recovery (see Point III, below). Accordingly, Defendants will not be prejudiced by its inclusion in an amended complaint.

The proposed Seventh Claim for Relief, against Brady, is for fraudulent misrepresentation. Similar to the promissory estoppel claim for relief, this claim involves no additional facts or contentions, not already disclosed in the litigation, excepting Brady's state of mind [intent] (see Point III, below). Accordingly, Defendants will not be prejudiced by its inclusion in an amended complaint.

Consequently, the remedy of piercing the corporate veil and component additional claims for relief, as well as the increase in the damages sought, are being raised relatively early in the litigation and Defendants will not be prejudiced by their timing, rendering leave to file the Proposed Amended Complaint appropriate at this time.

**POINT II**

**Plaintiff May Assert Alter Ego Liability
of Defendant Frank Brady in the First,
Second and Third Claims for Relief.**

The Proposed Amended Complaint (Exhibit D) seeks to include Brady

as a liable party on the First Claim for Relief for breach of contract, the Second

Claim for Relief for quantum meruit and the Third Claim for Relief for unjust

enrichment.  Although Brady and LCPT are already defendants in the First

Claim for Relief for breach of contract, the current claim therein against Brady

stems from direct contractual liability to the MF.  The alter ego liability sought

against Brady represents alternative pleading to hold Brady jointly liable with

LTCP in the event the trier of fact determines that there was not a contract

between Brady and MF.  At that point, piercing the corporate veil would

apply.

To make out a cause of action for liability on the theory of piercing the

corporate veil because the entity at issue is the defendant's alter ego, the

complaining party must, above all, establish that the owners of the entity,

through their domination and control of it, abused the privilege of doing

business in the corporate form to perpetrate a wrong or injustice against the

7

party asserting the claim such that a court in equity will intervene. S*ee ABN AMRO Bank, N.V.* v. *MBIA Inc.,* 17 N.Y.3d 208, 229, 928 N.Y.S.2d 647 (2011).  Piercing of the corporate veil is not a cause of action independent of that against the entity.  It is established when the facts and circumstances compel a court to disregard the corporate form and hold the owners or principal actors, who are otherwise shielded from liability, liable. *Matter of Morris* v. *New York State Dept. of Taxation and Fin.,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807 (1993). "Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, the New York cases may not be reduced to definitive rules governing the varying circumstances when the power may be exercised."  *Id.*  Indeed, the First Department has observed:

> "In determining the question of control, courts have considered factors such as the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the alleged dominated corporation; whether the corporations are treated as independent profit centers; and the payment or guarantee of the corporation's debts by the dominating entity ... [n]o one factor is dispositive" (*TNS Holdings v. MKI Sec. Corp.,* 243 A.D.2d 297, 300, 663 N.Y.S.2d 144 [1st Dept. 1997], *revd. on other grounds,* 92 N.Y.2d 335, 680 N.Y.S.2d 891, 703 N.E.2d 749 [1998])."

*Tap Holdings, LLC* v. *Orix Finance Corp*., 109 A.D.3d 167, 174, 970 N.Y.S.2d

178, 183 (1ˢᵗ Dep't 2013).

New York does not recognize these theories of liability [piercing the corporate veil and alter ego liability] as a separate cause of action." *26/32 LLC v. Vallat, Inc.*, No. 158825/2014, 2015 BL 278209, *4 (Sup. Ct. N.Y. Co. 2015).

> The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation (see, e.g., *Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152; *Port Chester Elec. Constr. Corp. v Atlas*, 40 NY2d 652; *Walkovszky v Carlton*, supra; *Bartle v Home Owners Coop.*, supra). The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed (see, 1 Fletcher, Cyclopedia of Private Corporations § 41, at 603 [perm ed]). <u>Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners</u> [emphasis supplied] (see, id., at 602-603).

*Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 140-41, 603 N.Y.S.2d 807, 810 (1993).  Piercing the corporate veil is a remedy and not a separate cause of action.  See, *Wm. Passalacqua Builders* v. *Resnick Developers*, 933 F.2d 131, 139 (2d Cir. 1991).

> Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff whiF603ch resulted in plaintiff's injury [citations

9

omitted].

Id. 82 N.Y.2d at 141-42, 603 N.Y.S.2d at 810-811.

The Proposed Amended Complaint (Exhibit D) alleges, as follows:

15.  Upon information and belief, Brady acted as the alter ego of LTCP and operated LTCP, directly or indirectly, for his own personal use and benefit, including, among other things, commingling assets and misusing LTCP's assets for his own personal use.

16.  Upon information and belief, as a direct result of the actions of Brady, LTCP lacks the assets to sufficiently pay Plaintiff its incurred fees, plus expenses.

17.  Upon information and belief, LTCP only paid a small portion of its business expenses and Brady, either directly or indirectly paid a large portion of LTCP's business expenses.

18.  Upon information and belief, Brady and LTCP failed to properly reflect in LTCP's books, journals, balance sheets and records Brady's direct or indirect payments for the expenses of LTCP as loans, capital contributions or otherwise.

19.  Upon information and belief, Brady caused to be transferred all of the equity which LTCP held in Angry Anemal, LLC and Boca Bel Toro de Corrillo, S.A. d/b/a Costa Rica Water Company to Brady or entities related to Brady, without adequate consideration.

20.  Brady intentionally and severely undercapitalized LTCP.

21.  Plaintiff rendered and continued to render services on behalf of LTCP in reliance that LTCP was and would be operated as a real, independent entity and not as a personal financial appendage of Brady.

22.  Brady comingled LTCP's businesses, assets and liabilities with his other businesses, assets and liabilities.

23.  By reason of the foregoing, a fraud was perpetrated on Plaintiff.

10

24.  Brady has acted as and is the alter ego of LTCP.

Although MF suspected that Brady was treating LTCP as an extension of himself, MF could not be sure until it requested the bookkeeping and accounting journals and entries to determine if Brady and LTCP accounted for the numerous, 21 separate payments made by Brady or entities he controlled for legal work performed on behalf of LTCP.   Since Defendants have refused to provide such bookkeeping and accounting journals and entries, MF feels confident that he never accounted for them.   More importantly, at Brady's deposition just held on September 29, 2020, Brady admitted that he may have accounted for only a few of those payments in the books of LTCP (Fraade Declaration, Para. 6) (infra. p. 4).

Additionally, the proposed assertion of alter ego liability in the First, Second and Third Claims for Relief neither joins new parties to this lawsuit nor introduces a new claim for relief.   In fact, alter ego liability may be asserted at any time, even after a judgment is entered.   See, *Epperson* v. *Entertainment Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001); see, *Emerson Elec. Co.* v. *Holmes*, 16-CV-1390, at *7 (E.D.N.Y. Aug. 11, 2020); see, *Agai* v. *Antoniou*, 527 B.R. 71, 75 (Bankr. E.D.N.Y. 2015).

## POINT III

### The Proposed Amended Complaint States
### a Claim for Relief against Brady for
### Promissory Estoppel.

The Sixth Claim for Relief, as stated in the Proposed Amended Complaint, alleges that Brady is liable to MF on the theory of promissory estoppel.  To state an affirmative claim for promissory estoppel, a party must allege: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir. 1989).

### A Clear and Unambiguous Promise

With respect to a clear and unambiguous promise, the Proposed Amended Complaint alleges as follows:

7.      On or about November 15, 2017, at Brady's and LTCP's request, Plaintiff and Brady and LTCP agreed that Plaintiff would provide legal services on behalf of Brady and LTCP at Plaintiff's customary and usual hourly rates.

8.      It was agreed and understood between Plaintiff (by Alan P. Fraade and Frederick M. Mintz, its principals) and Brady and LTCP, that Brady would be primarily responsible for the payment of Plaintiff's legal fees and expenses, in view of the fact that LTCP was not in a position to pay legal fees during most of the period covered by Plaintiff's representation.

9.      At the request of Brady and LTCP, Plaintiff rendered legal services for LTCP from on or about November 15, 2017 through on or about

July 31, 2019.

47.    It was the intent of the Plaintiff and Brady that Brady would be principally liable for Plaintiff's fees.

71.    By reason of the foregoing, Brady made a clear and unambiguous promise to directly pay Plaintiff for the legal services rendered on behalf of LTCP; that Plaintiff reasonably relied upon such promise, which reliance was reasonably foreseeable by Brady; and that Plaintiff incurred damages in the sum of $501,586, plus expenses, based upon such reliance.

(Exhibit D, Proposed Amended Complaint).

Accordingly, there was a clear and unambiguous promise.

### Reasonable and Foreseeable Reliance on that Promise

With respect to Reasonable and Foreseeable Reliance on that Promise,

the Proposed Amended Complaint alleges as follows:

6.    Upon information and belief, on or about November 15, 2017 and thereafter, LTCP was being substantially funded by Brady, personally, and by entities related to Brady.

46.    Brady, in recognition and in support and evidence of such guarantee, personally paid legal fees and expenses of LTCP, almost all of the time directly to Plaintiff, thus inducing Plaintiff to render and continue to render legal services to LTCP, in reliance that such fees would be paid by Brady because LTCP lacked funds to pay the same at the time of such services.

68.    Brady initially paid Plaintiff its legal fees and continued to pay Plaintiff its legal fees, whereas LTCP only made four out of twenty-five payments to Plaintiff, accounting for only a small portion of the legal fees paid.

69.     Plaintiff continued to render legal services on behalf of LTCP in reliance upon Brady paying its legal fees.

71.     By reason of the foregoing, Brady made a clear and unambiguous promise to directly pay Plaintiff for the legal services rendered on behalf of LTCP; that Plaintiff reasonably relied upon such promise, which reliance was reasonably foreseeable by Brady; and that Plaintiff incurred damages in the sum of $501,586, plus expenses, based upon such reliance.

(Exhibit D, Proposed Amended Complaint).

Accordingly, MF reasonably and foreseeably relied upon Brady's promise to pay its legal fees.

## Injury to the Relying Party as a Result of the Reliance

With respect injury as a result of MF's reliance, the Proposed Amended Complaint alleges as follows:

11.     There is currently due and owing from LTCP and Brady to Plaintiff, for services rendered from June 1, 2018 through on or about July 31, 2019, unpaid legal fees in the sum of $501,586, plus expenses.

12.     Payment has been duly demanded of Brady and LTCP and no payments have been made on such sums due.

13.     By reason of the foregoing, Plaintiff has been damaged in the amount of $501,586, plus expenses.

28.      The reasonable value of such unpaid legal services is the sum of $501,586, plus expenses.

70.     Plaintiff would not have continued to render legal services on behalf of LTCP had Brady not promised to pay Plaintiff's fees.

71.     By reason of the foregoing, Brady made a clear and unambiguous

14

promise to directly pay Plaintiff for the legal services rendered on behalf of LTCP; that Plaintiff reasonably relied upon such promise, which reliance was reasonably foreseeable by Brady; and that Plaintiff incurred damages in the sum of $501,586, plus expenses, based upon such reliance.

(Exhibit D, Proposed Amended Complaint).

By reason of the foregoing, MF was injured due to Brady's promise to pay its legal fees.

Therefore, accepted as facially true, the Proposed Amended Complaint sets forth a clear and unambiguous promise that Brady would pay MF its legal fees; that MF reasonably relied on such promise when performing legal services on behalf of LTCP; and that MF suffered damages as a result of its reliance upon Brady paying its legal fees.  Thus, the Sixth Claim for Relief states a claim for promissory estoppel.

## POINT IV

### The Proposed Amended Complaint States a Claim for Relief against Brady for Fraudulent Misrepresentation.

The Seventh Claim for Relief, as stated in the Proposed Amended Complaint, alleges that Brady is liable to MF for fraudulent misrepresentation. To state a claim for fraudulent misrepresentation, a party must allege that: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the

representation; and (4) the plaintiff suffered damage as a result of such reliance." *The Indep. Order v. Donald, Lufkin Jenrette*, 157 F.3d 933, 940 (2d Cir. 1998).

## False Representations

With respect to false representations, the Proposed Amended Complaint alleges as follows:

8.      It was agreed and understood between Plaintiff (by Alan P. Fraade and Frederick M. Mintz, its principals) and Brady and LTCP, that Brady would be primarily responsible for the payment of Plaintiff's legal fees and expenses, in view of the fact that LTCP was not in a position to pay legal fees during most of the period covered by Plaintiff's representation.

74.      Brady promised and represented to MF before and continuously during the period which MF rendered legal services for LTCP (through Alan P. Fraade and Frederick M. Mintz, its principals, as well as its associates and law clerks) that he would personally or through his other entities pay for MF's services since LTCP lacked the funds to pay for MF's services.

75.      The promises and representations made by Brady were either false and known to be false by Brady when made or were made recklessly without regard to whether or not they were true or would be true or were intended to be fulfilled by Brady.

Accordingly, the Proposed Amended Complaint alleges false representations.

## Intent

As discussed in *Powers* v. *Ostreicher*, 824 F. Supp. 372, 376-77 (S.D.N.Y. 1993),

"the "intent" standard of § 531 [The Restatement of Torts] has

been given an expansive reading in the context of a fraudulent misrepresentation claim: A result is intended if the actor either acts with the desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct. Thus one who believes that another is substantially certain to act in a particular manner as a result of a misrepresentation intends that result, although he does not act for the purpose of causing it and does not desire to do so."

Additionally, in the Second Circuit, a complaint may establish the requisite strong inference of fraudulent intent by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Green* v. *Covidien LP*, 18 Civ. 2939 (PGG), at *14 (S.D.N.Y. Aug. 30, 2019) citing *Stevelman* v. *Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999).

With respect to intent, the Proposed Amended Complaint alleges as follows:

8.      It was agreed and understood between Plaintiff (by Alan P. Fraade and Frederick M. Mintz, its principals) and Brady and LTCP, that Brady would be primarily responsible for the payment of Plaintiff's legal fees and expenses, in view of the fact that LTCP was not in a position to pay legal fees during most of the period covered by Plaintiff's representation.

9.      At the request of Brady and LTCP, Plaintiff rendered legal services for LTCP from on or about November 15, 2017 through on or about July 31, 2019.

10.      Additionally, at the request of Brady, Plaintiff rendered services personal to Brady with respect to a Securities and Exchange Commission investigation.

20.      Brady intentionally and severely undercapitalized LTCP.

22.     Brady comingled LTCP's businesses, assets and liabilities with his other businesses, assets and liabilities.

23.     By reason of the foregoing, a fraud was perpetrated on Plaintiff.

35.     Brady and LTCP benefitted from the legal services rendered to LTCP by Plaintiff.

44.     Additionally, Brady directly received the benefit of Plaintiff's services, as he was personally represented by the Plaintiff in connection with a Securities and Exchange Commission investigation.

46.     Brady, in recognition and in support and evidence of such guarantee, personally paid legal fees and expenses of LTCP, almost all of the time directly to Plaintiff, thus inducing Plaintiff to render and continue to render legal services to LTCP, in reliance that such fees would be paid by Brady because LTCP lacked funds to pay the same at the time of such services.

47.     It was the intent of the Plaintiff and Brady that Brady would be principally liable for Plaintiff's fees.

75.     The promises and representations made by Brady were either false and known to be false by Brady when made or were made recklessly without regard to whether or not they were true or would be true or were intended to be fulfilled by Brady.

77.     Brady knew that Plaintiff would rely upon his representations and promises to Plaintiff's detriment.

(Exhibit D, Proposed Amended Complaint).

Accordingly, the Proposed Amended Complaint alleges Brady's intent to defraud.

## Reasonable Reliance

The Proposed Amended Complaint alleges reasonable reliance on the

part of MF, as follows:

76.     Plaintiff   reasonably   relied   upon   such   promises   and
representations to its detriment.


Accordingly,   the   Proposed   Amended   Complaint   alleges   MF's

reasonable reliance on Brady's promises and representations.


**Damages**

The Proposed Amended Complaint alleges damages incurred by MF

proximately caused by Brady's promises and representations, as follows:

78.     Plaintiff,   reasonably   relying   upon   the   promises   and
representations of Brady, rendered legal services and continued to render legal
services on behalf of LTCP.

79.     By reason of the foregoing, Plaintiff incurred damages in the sum
of   $501,586,   plus   expenses,   proximately   caused   by   intentional
misrepresentations and false promises or reckless misrepresentations and false
promises of Brady.

(Exhibit D, Proposed Amended Complaint).

By reason of the foregoing, the Proposed Amended Complaint alleges

that damages were proximately caused by MF's reliance on Brady's promises

and representations.

Therefore, accepted as facially true, the Proposed Amended Complaint

sets forth Brady's false promises and misrepresentation, made with the intent

to defraud, which were reasonably relied upon by MF to its detriment and that

MF suffered damages proximately caused by Brady's promises and representations. Accordingly, the Seventh Claim for Relief states a claim for fraudulent misrepresentation.

## Conclusion

By reason of the foregoing, it is respectfully submitted that Plaintiff's motion for leave to file an amended complaint be granted in its entirety and that the Court grant Plaintiff such other and further relief as to it may seem just and proper.

Respectfully submitted,

Law Offices of Kramer, LLC

By:_____
        Edward C. Kramer (8411)
        (a principal of the firm)
Office and Post Office Address
260 Madison Avenue, 16th Floor
New York, New York 10022

Edward C. Kramer
        Of Counsel