UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
THE MINTZ FRAADE LAW FIRM, P.C.,                        :
:
                            Plaintiff,                :
:      19-CV-10236 (JMF)
           -v-                                                    :
:      OPINION AND ORDER
FRANK BRADY and LIFE'S TIME CAPSULE       :
SERVICES, INC.,                                                      :
:
                           Defendants.              :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        In this case, the Mintz Fraade Law Firm, P.C. ("Mintz Fraade") sues Frank Brady and Life's Time Capsule Services, Inc. ("LTCP," and together, "Defendants") for unpaid fees relating to its representation of LTCP. Near the end of discovery, after filings from both Mintz Fraade and Defendants' own counsel made clear that Brady was not complying with certain discovery requests, the Court ordered Defendants — on penalty of sanctions — to comply with seven pending discovery requests. *See* ECF No. 56 ("Oct. 12th Order"). In response, Brady produced only about twenty documents. Mintz Fraade then moved, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, for sanctions against Defendants. Based upon its review of the motion papers, the Court concluded that a deposition of Brady regarding his efforts to comply with the Court's Order was warranted and invited supplemental submissions from both sides. Upon review of those submissions and the deposition transcript, the Court concludes that Defendants should indeed be sanctioned for failure to comply with the Court's Order.

## BACKGROUND

Discovery in this case was initially scheduled to be completed by June 11, 2020, *see* ECF No. 17, ¶ 8(b), but it was later extended to August 26, 2020, *see* ECF No. 37, and then October 14, 2020, *see* ECF No. 41; *see also* ECF No. 43 (refusing to extend the deadline beyond October 14, 2020). On October 9, 2020, with less than a week to go in discovery, Mintz Fraade filed a motion to compel the production of certain documents. ECF No. 48. Defense counsel responded and stated that, "[a]fter discussing the matter with Mr. Brady" in September 2020, he had confirmed that Defendants would search for and produce documents responsive to a number of Mintz Fraade's requests. ECF No. 55 ("Defs.' Letter Resp."), at 1. But following that conversation, defense counsel explained, he "experienced considerable resistance from Mr. Brady in . . . . responding to [counsel's] communications generally and cooperating with [counsel's] efforts to complete discovery in particular." *Id.* Defense counsel reported that "[w]hen he has responded to [counsel's] communications, Mr. Brady . . . consistently told [counsel] that he [was] working on the requests and promise[d] to provide the documents shortly," but more than three weeks had passed without counsel receiving additional documents from Brady. *Id.*; *see also* ECF No. 67 ("Aloe Decl."), ¶ 3 (defense counsel noting that "on repeated occasions," his firm asked Brady to search all records within his possession, custody, or control).

In any event, defense counsel stated that Defendants had committed to search for and produce documents responsive to the following requests by Mintz Fraade:

- Request No. 25: documents concerning payments made to Mintz Fraade
- Request No. 26: documents concerning Defendants' purported termination of Mintz Fraade
- Request No. 27: documents concerning the issuance of LTCP stock to Mintz Fraade

Defs.' Letter Resp.; ECF No. 48-1, at 5.  Additionally, Defendants agreed to search for and produce documents responsive to the following requests, subject to a limitation to "documents directly relating to [Mintz Fraade]":

- Request No. 14: documents concerning Defendants' communications with accountants

- Request No. 16: documents concerning LTCP financial statements

- Request No. 17: documents concerning Brady's travel to and from New York City

- Request No. 19: documents concerning an action pending in Nevada state court to which Defendants are parties

Defs.' Letter Resp.; ECF No. 48-1, at 4.

In the meantime, on October 9, 2020 — the same day that Mintz Fraade filed its motion to compel — defense counsel filed a motion to withdraw, citing Defendants' nonpayment of legal fees and a "fail[ure] to cooperate with [counsel] in . . . efforts to complete discovery."  ECF No. 52, at 1; *see* ECF No. 50.  As he did in connection with the motion to compel, defense counsel declared that, "after discussing the [discovery] issues" raised by Mintz Fraade's counsel in September 2020 "with Mr. Brady," he had promised Plaintiff's counsel that he would "search for, review, and produce additional potentially responsive documents."  ECF No. 51 ("Aloe Withdrawal Decl."), ¶ 22.  To fulfill this commitment, defense counsel had "been seeking to obtain . . . additional potentially responsive documents from Mr. Brady for several weeks" but, "[d]espite having made several promises to provide the documents, none ha[d] been provided" by Brady.  *Id.*  ¶ 23.  Similarly, defense counsel declared that Brady had failed to respond to counsel's inquiries regarding the scheduling of a deposition of a Mintz Fraade representative.  *Id.* ¶ 24.

On October 12, 2020, the Court ordered Defendants to produce — no later than October 20, 2020 — documents responsive to Request Nos. 25, 26, and 27 and, subject to the limitations

on scope that they had proposed in their response, Request Nos. 14, 16, 17, and 19. Oct. 12th Order. The Court warned that "[f]ailure to do so" by the deadline "may result in sanctions — up to and including negative inferences, attorney's fees, the striking of Defendants' answer, and entry of judgment." *Id.* In response to the October 12th Order, Defendants produced a mere twenty-one or twenty-two individual documents to Mintz Fraade on October 15, 2020. *See* ECF No. 65-1, ¶ 8; ECF No. 65-10.[1] This production included: nothing in response to Request Nos. 14, 17, 25, and 26; only one document — a publicly available 2018 LTCP annual statement — in response to Request No. 16; only three documents — two of which were publicly filed in a separate matter pending before another court — in response to Request No. 19; and only four documents in response to Request No. 27. ECF No 65-1, ¶¶ 9-15.

At a conference held on October 21, 2020, Mintz Fraade complained about the inadequacy of Defendants' production in response to the October 12th Order, and the Court set a briefing schedule for Mintz Fraade to file a motion for discovery-related sanctions. *See* ECF No. 64. The Court deferred ruling on defense counsel's motion to withdraw, but indicated that it was "prepared to grant the motion after [the] motion for sanctions is resolved." *Id.* ¶ 5. Thereafter, Mintz Fraade timely filed the present motion. ECF No. 65. In its motion, it seeks judgment against Defendants and the striking of Defendants' Amended Answer and Counterclaim, or — in the alternative — issue preclusion and negative inferences at trial. *Id.* It also seeks attorney's fees. *Id.* In response to the motion, Brady asserted that he had searched for and produced "all responsive documents within [D]efendants' possession, custody or control" and that "no

---

[1]    Mintz Fraade states that Brady produced twenty-two documents, ECF No. 65-1, ¶ 8, but there are only twenty-one documents listed in the exhibit attached to its declaration, *see* ECF No. 65-10. Further, Brady declared that he produced twenty-one documents in response to the October 12th Order. ECF No. 68 ("Brady Decl."), ¶ 6. Whether the number is twenty-one or twenty-two has no bearing on the Court's analysis or conclusion.

4

documents ha[d] been withheld." Brady Decl. ¶ 7. Defense counsel represented that "all responsive documents that Mr. Brady provided" had been produced. Aloe Decl. ¶ 3.

On November 24, 2020, the Court issued an Order stating that "there [we]re reasons to doubt Mr. Brady's conclusory assertion" that he had searched for and produced all responsive documents since the record to support that assertion was "thin," and permitted Mintz Fraade to conduct a deposition of Brady to ascertain Defendants' efforts to comply with the October 12th Order. ECF No. 71. At the deposition, taken on December 4, 2020, Brady could identify only one method he had used to search for responsive documents: searching through his email (though he also stated that he had looked at his calendar in response to Request No. 17 as well). ECF No. 74-1 ("Brady Depo."), at 14-15, 24-25, 28, 30-31. To make matters worse, Brady stated that his LTCP email address was "expired" because the "bill wasn't paid for the services" and that he had not searched the account because he no longer had access to it; thus, he was able to search only his personal email account. *Id.* at 10-11, 15-16.[2] Brady also acknowledged that he had made no efforts to locate documents in the possession of other LTCP personnel. Brady Depo. 18, 20, 22, 26.[3] Brady could identify no instance in which he searched for hard-copy documents, credit or debit card statements, personal or business bank account documents, or the records of other business entities under his control. *Id.* at 18-19, 25, 27-28. Instead, he stated that he had produced all documents that were in his possession and did not know about the existence of any other responsive documents. *Id.* at 19-20, 35-36.

---

[2] Brady appears to have two personal Gmail accounts, both of which he used for some business purposes. *See, e.g.*, ECF No. 74-2; *see also* ECF No. 74 ("Kramer Supp. Decl."), ¶ 13. It is unclear from the deposition transcript which of the two emails he searched.

[3] Brady did testify that he spoke with Derek Markey, a LTCP director, about document production, but the record is unclear with respect to what contributions, if any, Markey made to the production of documents in response to the October 12th Order. *See id.* at 8-9.

**LEGAL STANDARD**

Rule 37(b)(2) provides in relevant part that, "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders." Such orders, the Rule continues, "may include the following":

    (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii)    striking pleadings in whole or in part;

    (iv)    staying further proceedings until the order is obeyed;

    (v)    dismissing the action or proceeding in whole or in part;

    (vi)    rendering a default judgment against the disobedient party; or

    (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A); *see Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). Upon finding that a party failed to obey a court order "to provide or permit discovery," a district court has "wide discretion in imposing sanctions under Rule 37," and may consider a number of factors in deciding whether and how to do so; the Rule's bottom-line requirement, as its text indicates, is "only that the district court's orders be just." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143-44 (2d Cir. 2010) (internal quotation marks omitted); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

In deciding what sanctions to impose, a court should consider various factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy

of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New Eng. Tel. Co.*, 624 F.3d at 144 (internal quotation marks omitted).  Notably, "a party's willfulness in disobeying a discovery order is *not* a prerequisite to Rule 37 sanctions; instead, it is merely one of several factors to be considered in selecting a sanction." *New York v. U.S. Dep't of Commerce*, 461 F. Supp. 3d 80, 92 (S.D.N.Y. 2020) (emphasis added) (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067-68 (2d Cir. 1979)).  That said, "[t]he sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)).

## DISCUSSION

Applying the foregoing standards here, the Court easily concludes that sanctions should be imposed on Defendants.  Alerted by defense counsel's own complaints with respect to Brady's recalcitrance in providing documents, *see, e.g.*, Defs.' Letter Resp. 1; Aloe Withdrawal Decl. ¶ 23, the Court was clear in its October 12th Order: Defendants were required to comply with seven of Mintz Fraade's requests for production (and even limited the scope for four at Defendants' request) and that failure to comply might result in sanctions, up to and including entry of judgment.  In response, Defendants produced a meager twenty-one or twenty-two documents obtained from Brady and Brady alone.  Given Brady's history in this case, the Court was understandably suspicious of Defendants' conclusory assertion that this production — a whopping zero documents in response to four of the seven requests — exhausted the universe of responsive documents, particularly in light of defense counsel's implicit representations that the

7

prior discovery issues were caused by Brady's failure to cooperate (and not the nonexistence of responsive documents), Aloe Withdrawal Decl. ¶ 23; Defs.' Letter Resp. 1. Thus, the Court allowed Mintz Fraade to depose Brady regarding his discovery efforts.

The transcript of Brady's deposition confirms that (1) Brady's efforts at compliance were inadequate; and (2) LTCP made no efforts to search for and produce responsive documents apart from relying on Brady's meager efforts. To be sure, Brady has represented that no additional documents exist in his possession, custody, or control and, ordinarily, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal quotation marks omitted). But here, there are ample reasons to find, and the Court does find, that Brady's averments are not made in good faith. Moreover, the Court evaluates Brady's efforts "in light of the full record in the case," *Cine-Forty-Second St. Theatre Corp.*, 602 F.2d at 1068, including his demonstrated history of frustrating discovery efforts in the past, *see* Defs.' Letter Resp. 1; Aloe Withdrawal Decl. ¶ 23.

Notably, Defendants did little more than manually search one of Brady's personal email accounts to comply with the Court's Order. That is not enough. Rule 34(a)(1) allows for discovery of documents in a party's "possession, custody, or control," and requires a party "to conduct a reasonable and diligent search for responsive documents," *Wilson v. Town of Cheektowaga*, No. 18-CV-1255W(F), 2021 WL 195348, at *3 (W.D.N.Y. Jan. 20, 2021) (citation omitted). "The concept of control has been construed broadly. If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have control . . . ." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y.

2006) (internal quotation marks and citation omitted).  Here, neither Brady — nor LTCP, which is a Defendant in its own right — made any effort to locate documents in the possession of other LTCP personnel, despite knowing that these personnel worked on issues relevant to the discovery requests.  *See, e.g.*, Brady Depo. 18, 22-23, 26-27 (no efforts to search for documents in the possession of administrator Launie McDaniel); *id.* at 19-20, 23 (no efforts to search for documents in the possession of former CEO Bernard Findley).[4]

This hardly constitutes a "diligent search."  *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (noting that a "diligent search" might include "identifying key employees and reviewing any of their files that are likely to be relevant"); *see also Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-CV-2275 (JGK) (DF), 2016 WL 11271874, at *23 (S.D.N.Y. Nov. 4, 2016) (finding a witness's search for documents to be "cursory at best" and "not reasonably diligent" when — in addition to searching her own email and company drives — she asked only a single colleague for documents and did not search the files of other relevant individuals), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017); *Scovin v. Great W. Life & Annuity Ins. Co.*, No. 3:02-CV-1161 (AWT) (DFM), 2006 WL 2828428, at *3, *6 (D. Conn. Sept. 29, 2006) (holding that a parties' failure to ask a former corporate official for documents constituted a failure to comply with a previous order to produce discovery and warranted Rule 37(b)(2) sanctions).  Brady's assertions that *he* did not know where LTCP records were kept and that *he* did not maintain the company's paper records, Brady

---

[4]  Notably, there is no indication in the record that Defendants sought documents from or though David Stewart, whom defense counsel and Brady himself previously identified as the current Chief Executive Officer of LTCP.  *See* ECF No. 74-3, at 63 (Brady's September 29, 2020 deposition); *see also* Aloe Withdrawal Decl. ¶ 16; Aloe Decl. ¶ 3 (referring to Brady as the "*then* chief executive officer of LTCP" (emphasis added)).  Mysteriously, mere weeks after identifying Stewart as the new LTCP CEO, Brady testified in his December 4, 2020 deposition that *he* was still the CEO and that he had "continuously" been CEO for the preceding year.  Brady Depo. 4-5.

9

Depo. 18, 20, are not enough to relieve him, let alone LTCP, of the obligation to search for, and produce, all documents mandated by the October 12th Order.

In addition, the record demonstrates that Brady neglected to take additional reasonable steps to conduct a diligent search for even those documents in his own possession, custody, or control. For example, he could identify no instance in which he had searched for credit or debit card statements, personal or business bank account documents, or the records of other business entities under his control that were used to pay Mintz Fraade. *Id.* at 18-19, 25, 27-28. And although he testified that he no longer had access to his old LTCP emails because the account was "expired," *id.* at 10-11, the record reflects no efforts made by Brady to inquire about whether these emails were permanently deleted or whether he could otherwise obtain access to them.

It is true that "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain." *Shcherbakovskiy*, 490 F.3d 130 at 138. But here, it is plain that Defendants' failure to produce more than twenty-two documents (several of which are publicly available) in response to the October 12th Order is attributable to Defendants' insufficient efforts, not to those documents' non-existence or to their being outside of Defendants' possession, custody, or control. This conclusion is supported by defense counsel's own repeated complaint that Brady was stonewalling discovery of "additional potentially responsive documents," implying, if not conceding, that it was Brady's failure to cooperate — and not that the documents did not exist or were not accessible — that caused discovery issues in the first place. *See* Aloe Withdrawal Decl. ¶ 23; Defs.' Letter Resp. 1. As such, the Court is not convinced that the twenty-one or twenty-two additional documents produced exhausts all responsive documents in LTCP or Brady's possession, custody, or control. This is particularly

so in light of the types of documents at issue, including documents pertaining to the financial activities of LTCP, a publicly traded company; LTCP's correspondence with accountants; LTCP's relationship with, and payments to, its former counsel; and LTCP's issuance of stock to its counsel. Defendants' claim that no additional documents in these categories exist, ECF No. 75 ("Aloe Supp. Decl."), ¶ 21; *see also* Brady Depo. 19-20, 35, is a tough sell, one that — under the totality of the circumstances here — the Court is unwilling to buy.

Defendants argue that sanctions are inappropriate because much of the discovery sought by Mintz Fraade is not "relevant to any claim or defense." Aloe Supp. Decl. ¶ 22; *see also id.* ¶ 9 (describing the document requests as "tangential" and failing to "shed[] any light on any of the issues that are actually disputed in this case"). But whether or not its premise is accurate, this argument misses the point. The sanctions Mintz Fraade seeks are not in response to the failure to comply with discovery requests made pursuant to Rules 26(b) and 34(a); the sanctions are for Defendants' failure to comply with this Court's October 12th Order. "The propriety of the discovery sought is not in issue at the time sanctions are being imposed under Rule 37(b)." *Blatch v. Franco*, No. 97-CV-3918 (LTS) (HBP), 2002 WL 342453, at *2 (S.D.N.Y. Mar. 5, 2002) (quoting 8A Wright & Miller, Federal Practice and Procedure § 2289 (2d. ed. 1994)); *see also Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, No. 00-CV-3613 (LAP), 2004 WL 1943099, at *7 (S.D.N.Y. Aug. 27, 2004) ("[T]he law does not support [the] view that a party or its counsel may ignore a court order to produce materials because it considers them irrelevant."); *Indep. Prods. Corp. v. Loew's Inc.*, 30 F.R.D. 377, 380 (S.D.N.Y. 1962) ("Ordinarily on a motion under 37(b) there will be no need to inquire into the propriety of the questions unanswered, since this will have been determined on the motion under 37(a)."). In any event, even if the Court were to entertain Defendants' argument, their objections to

relevancy fail. Relevancy, for purposes of Rule 26, is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Measured against that standard, Mintz Fraade's requests for documents pertaining to LTCP's finances as well as its payments to, and purported termination of, Mintz Fraade easily qualify.[5]

Having concluded that Rule 37(b)(2) sanctions against Defendants are warranted, the Court turns to what form the sanctions should take. For starters, Rule 37 provides that "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey an order to provide or permit discovery]." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). The plain language of Rule 37 notwithstanding, Defendants argue that attorney's fees are inappropriate because Mintz Fraade's counsel is allegedly "proceeding one [sic] some sort of contingency basis." Aloe Supp. Decl. ¶ 24 n.1. But this argument has no merit. *See, e.g.*, *Hamilton v. Ford Motor Co.*, 636 F.2d 745, 749-50 (D.C. Cir. 1980) (awarding Rule 37(b) fees notwithstanding counsel's retainer on contingency); *Nat'l Lawyers Guild v. Attorney Gen.*, 94 F.R.D. 616, 618 (S.D.N.Y. 1982) (noting that in contexts analogous to Rule 37 sanctions, courts have "rejected the contention . . . that plaintiffs represented on a pro bono basis are not entitled to attorneys' fees").[6] Accordingly,

---

[5]   Request No. 19 appears to be relevant as well, as Mintz Fraade was apparently involved in some decision-making as to the claims underlying the Nevada lawsuit. *See* ECF No. 74-2, at 7-9; *see also* ECF No. 74-6. Additionally, at the time of the Court's October 12th Order, Request No. 17 was relevant to Defendants' personal jurisdiction defense. *See* ECF No. 14, ¶ 8. On October 30, 2020, Defendants withdrew that defense. *See* ECF No. 75-2.

[6]   Whether counsel is entitled to the fees Mintz Fraade is awarded depends on the nature of their agreement. *See Hamilton*, 636 F.2d at 748-49. In any event, the question is not before the Court now. *See Nat'l Lawyers Guild*, 94 F.R.D. at 618 ("Generally, courts have concluded that

Mintz Fraade is entitled to reimbursement for those expenses "caused by" Defendants' failures, Fed. R. Civ. P. 37(b)(2)(C), including attorney's fees relating to the motion as well as the fees and costs associated with Brady's deposition and the submissions thereafter. For now, Mintz Fraade seeks a total of $25,600 in attorney's fees and $699.90 in deposition costs. *See* ECF No. 65-1, ¶ 17; ECF No. 70, ¶ 9; Kramer Supp. Decl. ¶ 20. The Court finds these expenses to be reasonable.[7] Accordingly, Defendants are ordered to pay Mintz Fraade $26,299.90 no later than **March 3, 2021**, as well as additional expenses that the Court may order in connection with further submissions relating to Mintz Fraade's motion.

On top of attorney's fees, it is in the Court's discretion "to determine which sanction from among the available range [in Rule 37(b)(2)] is appropriate." *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989). Relevant to such a determination is the fact that Defendants were explicitly

---

the amount of a reasonable attorneys' fee award . . . should be determined without reference to any private agreement between client and counsel.").

[7] Notably, Defendants do not challenge the reasonableness of either counsel's hourly rate or the number of hours that counsel attributes to this motion and the deposition. *See Makinen v. City of New York*, No. 11-CV-7535 (ALC) (AJP), 2016 WL 1451543, at *3 (S.D.N.Y. Apr. 12, 2016) (calculating "the presumptively reasonable fee based off the rates requested" in the absence of any challenge to the general reasonableness of the billing rates); *Balu v. City of New York*, No. 12-CV-1071 (KPF), 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (explaining that "the [c]ourt will not adjust the rate sought" because the defendants "do not challenge the reasonableness of the hourly rate [the plaintiff's attorney] seeks"). In any event, the Court independently finds that that the number of hours (29.8 hours for the sanctions motion and reply papers, ECF No. 65-1, ¶ 17; ECF No. 70, ¶ 9, and 21.4 hours for Brady's deposition and related submissions, Kramer Supp. Decl. ¶ 20; ECF No. 74-10) and hourly rate ($500 per hour, Kramer Supp. Decl. ¶ 20) are reasonable. *See, e.g.*, *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588-89 (S.D.N.Y. 2018) (finding hourly rate of $765 for a partner and $325 and $450 for associates in connection with a sanctions motion to be reasonable), *aff'd sub nom. Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-CV-2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, 768 F. App'x 141 (2d Cir. 2019) (summary order); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 339 (S.D.N.Y. 2016) (finding a rate of $375 per hour in connection with a sanctions motion to be reasonable and lower than the prevailing rates in this District).

warned in the October 12th Order that "[f]ailure to [comply] may result in sanctions — up to and including negative inferences, attorney's fees, the striking of Defendants' answer, and entry of judgment." Oct. 12th Order. Indeed, whether a non-compliant party has been warned of the consequences of its noncompliance "has been identified as the 'most critical'" of the factors identified in *Southern New England Telephone Co.*, 624 F.3d at 144. *Ruiz v. Citibank, N.A.*, Nos. 10-CV-5950 (KPF) (RLE) et al., 2014 WL 4635575, at *3 (S.D.N.Y. Aug. 19, 2014) (alterations omitted) (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012)). In this case, Mintz Fraade seeks judgment against Defendants and the striking of Defendants' Amended Answer and Counterclaim, or — alternatively — issue preclusion and negative inferences at trial. ECF No. 65. But mindful of the obligation to "consider the efficacy of lesser sanctions" than entry of judgment, *Shcherbakovskiy*, 490 F.3d at 139, the Court declines to enter judgment against Defendants at this juncture. Instead, in light of the fact that Mintz Fraade has not specified what form its proposed issue preclusion and negative inferences would take, the Court reserves judgment on the imposition of additional sanctions pending supplemental submissions discussed below.

## CONCLUSION

For the foregoing reasons, the Court concludes that sanctions against Defendants are warranted and orders Defendants to pay Mintz Fraade $26,299.90 in fees and costs no later **March 3, 2021**. Failure to comply will result in additional sanctions, up to and including entry of judgment against Defendants.

The Court withholds judgment on any additional sanctions pending the following supplemental submissions. No later than **March 3, 2021**, Mintz Fraade shall file a letter of no more than five pages specifying what issues it seeks to preclude and what negative inferences it

14

seeks. The submission shall also include an update of any costs or fees incurred as a result of Defendants' violations beyond those awarded in this Opinion and Order. Defendants shall file any response, also not to exceed five pages, no later than **March 10, 2021**.

The Clerk of Court is directed to terminate ECF No. 65.[8]

SO ORDERED.

Dated: February 17, 2021
New York, New York

JESSE M. FURMAN
United States District Judge

---

[8] In a prior Order, the Court stated that it was "prepared to grant" defense counsel's motion to withdraw from this case after the present motion for sanctions was resolved. ECF No. 64, ¶ 5; *see also* ECF No. 50. Because this Order does not resolve the sanctions motion, the Court will continue to withhold judgment on the motion to withdraw. The Court reminds defense counsel that, unless and until the motion to withdraw is granted, counsel remains counsel of record. Additionally, the Court cautions Defendants that they would be well served to look for, and retain, new counsel now, as the Court is unlikely to give them much time to do so if or when current counsel's motion to withdraw is granted given how long Defendants have already had to find new counsel. The Court notes that while Brady can represent himself, LTCP must appear through counsel and that failure to do so may be deemed a default.