```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
THE MINTZ FRAADE LAW FIRM, P.C.,                                :
                                                                :
                           Plaintiff,                           :
                                                                :      19-CV-10236 (JMF)
            -v-                                                 :
                                                                :      MEMORANDUM OPINION
FRANK BRADY and LIFE'S TIME CAPSULE                             :      AND ORDER
SERVICES, INC.,                                                 :
                                                                :
                           Defendants.                          :
                                                                :
----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In an Opinion and Order entered on February 17, 2021, familiarity with which is assumed, the Court granted a motion by Plaintiff Mintz Fraade Law Firm, P.C. ("Mintz Fraade") for sanctions against Defendants Frank Brady and Life's Time Capsule Services, Inc. ("LTCP") based on their failure to comply with a Court Order directing them to search for and produce certain documents. *See Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 WL 621206, at *1 (S.D.N.Y. Feb. 17, 2021) (ECF No. 76); *see also* ECF No. 56 ("Oct. 12th Order"). The Court ordered Defendants to pay Mintz Fraade attorney's fees and costs, but reserved judgment on whether additional sanctions were warranted pending supplemental submissions regarding issue preclusion and negative inferences. *See* 2021 WL 621206, at *6-7. Having reviewed the supplemental submissions of both sides, *see* ECF No. 78 ("Pl.'s Letter"); ECF No. 82 ("Defs.' Letter"), the Court now rules on Mintz Fraade's requests.

Upon finding that a party failed to obey a court order "to provide or permit discovery" under Rule 37(b)(2) of the Federal Rules of Civil Procedure, as the Court did in its earlier Opinion and Order, a court has "wide discretion in imposing sanctions," and may consider a

number of factors in deciding whether and how to do so; the Rule's bottom-line requirement, as its text indicates, is "that the district court's orders be just." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143-44 (2d Cir. 2010) (internal quotation marks omitted); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Sanctions must also be "specifically related to the particular claim which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707 (internal quotation marks omitted); *see also Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1368 (2d Cir. 1991). The sanctions that the Court selects must be "commensurate with the non-compliance such that they restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (internal quotation marks omitted).

As discussed in the Court's February 17th Opinion and Order, Defendants here violated the Court's earlier Order by failing to search for and produce documents responsive to the following requests served by Mintz Fraade:

- Request No. 14: documents concerning Defendants' communications with accountants and relating directly to Mintz Fraade;

- Request No. 16: documents concerning LTCP financial statements and relating directly to Mintz Fraade;

- Request No. 17: documents concerning Brady's travel to and from New York City and relating directly to Mintz Fraade;

- Request No. 19: documents concerning an action pending in Nevada state court to which Defendants are parties and relating directly to Mintz Fraade;

- Request No. 25: documents concerning payments made to Mintz Fraade;

- Request No. 26: documents concerning Defendants' purported termination of Mintz Fraade; and

- Request No. 27: documents concerning the issuance of LTCP stock to Mintz Fraade.

2

*Mintz Fraade*, 2021 WL 621206, at *1-2. Measured against Defendants' failures to produce these categories of documents, as required, most of Mintz Fraade's requests for issue preclusion and negative inferences are without merit. In effect, when aggregated, Mintz Fraade's requests would "require the trier of fact to assume that as to almost every issue in dispute between the parties there are unproduced documents that would be favorable to [Mintz Fraade] and unfavorable to [Defendants]." *Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533 (CM) (BCM), 2017 WL 2840279, at *16 (S.D.N.Y. June 27, 2017). That assumption, however, is not supported by the record. Accordingly, while "the misconduct here was significant, such a sanction would be excessive." *Id.*

*First*, Mintz Fraade requests that the Court preclude Brady from offering evidence that he did not personally contract with Mintz Fraade to pay legal fees or that he is not liable for those fees on equitable theories of recovery. Pl.'s Letter 1-2. Along the same lines, Mintz Fraade asks that the Court draw an inference that the documents Defendants failed to produce would have been adverse to Brady's denial of individual liability on either contractual or equitable grounds. *Id.* Mintz Fraade argues that Request Nos. 14, 16, and 25 would have shown how payments made to Mintz Fraade were accounted for and that they may have shown that payments were not classified as Brady's loans or capital contributions, implying that they were Brady's "independent obligations." *Id.* In the Court's judgment, however, the connection, if any, is too attenuated and speculative. Even if the documents showed how the payments were classified, they would shed little light on the nature of any alleged contractual agreement between Brady and Mintz Fraade. Moreover, documents concerning Defendants' finances and payments do not implicate whether Brady was unjustly enriched or not or whether Mintz Fraade had an "expectation of compensation" from Brady in particular. *Cf. Briarpatch Ltd., L.P v. Phoenix*

3

*Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (listing the elements of an unjust enrichment claim); *Scott v. Rosenthal*, 53 F. App'x 137, 140 (2d Cir. 2002) (summary order) (listing the elements of a quantum meruit claim). Thus, these proposed sanctions are not justified.

*Second*, Mintz Fraade seeks to preclude Defendants from offering evidence that it received legal fees from what Defendants allege was an escrow account. Pl.'s Letter 3; *see also* ECF No. 14 ("Answer & Counterclaim"), ¶¶ 50-55 (alleging that Mintz Fraade withdrew $40,000 from LTCP's escrow account without authorization between March and May 2018). It also seeks an inference that the documents Defendants failed to produce would have been adverse to their counterclaim for forfeiture/disgorgement of the fees that Mintz Fraade did receive and to their contention that Mintz Fraade "is not entitled to or did not earn" fees. Pl.'s Letter 3. The first request is well justified, as the documents subject to Requests Nos. 14, 16, and 25 would presumably have shown how the proceeds from the escrow account were treated by Defendants. Beyond that, however, Defendants will be permitted to offer evidence that such transfers were unauthorized because the document requests do not specifically concern the issue of whether Defendants authorized any transfers. Additionally, the document requests at issue — which concern Defendants' internal finances, accounting, and payments to Mintz Fraade — do not bear on whether Mintz Fraade was "entitled to" or "earn[ed]" the claimed legal fees, *id.*, or on whether the fees Defendants did pay should be disgorged, *see* Answer & Counterclaim ¶ 74. Accordingly, the Court declines to impose these additional sanctions on this issue.

*Third*, Mintz Fraade seeks to preclude Defendants from offering evidence regarding whether Mintz Fraade was entitled to receive shares of LTCP stock, including shares it has already received and shares that it claims it is still owed. Pl.'s Letter 3-4. Similarly, it seeks an inference that the documents Defendants failed to produce would be adverse to their contention

that Mintz Fraade is not entitled to those shares. *Id.* In support, Mintz Fraade cites Defendants' failure to search for and produce documents responsive to Requests Nos. 14, 16, and 27. These requests are without basis. There is no dispute about the shares that Mintz Fraade has received and claims it is still owed: Mintz Fraade admits that it received 5,490,728 shares, ECF No. 16, ¶ 21, and Defendants admit that they have not delivered the 16,559,272 shares that Mintz Fraade claims it is still owed, Answer & Counterclaim ¶ 1. Thus, the underlying issue is not the number of contested shares, but rather whether Mintz Fraade is entitled to any of them. The documents sought — concerning Mintz Fraade's accounting and finances, as well as the issuance of stock — do not bear on Mintz Fraade's alleged failure to render legal services for which it was paid, let alone on whether shares should be disgorged because of Mintz Fraade's alleged actions in violation of the New York Rules of Professional Conduct or its duty of loyalty, *see* Answer & Counterclaim ¶ 74.

*Fourth*, Mintz Fraade seeks to preclude Defendants from offering evidence regarding LTCP's termination of Mintz Fraade, including evidence that such termination was "for cause." Pl.'s Letter 4; *see also* Answer & Counterclaim ¶ 71. Along similar lines, Mintz Fraade seeks an inference that the documents Defendants failed to produce would be adverse to their claims that LTCP terminated Mintz Fraade and that such termination was for cause. Pl.'s Letter 4. In support, Mintz Fraade points to Defendants' failure to produce documents responsive to Request No. 26, concerning Defendants' purported termination of Mintz Fraade. Defendants respond that such documents do not exist because the termination was oral, Defs.' Letter 4; *see also* ECF No. 74-1, at 35 (Brady testifying at a deposition that the termination was verbal), and Mintz Fraade provides no evidence to the contrary. Needless to say, there is no basis to impose sanctions for a failure to produce documents that do not exist. But having failed to produce any such

5

documents, Defendants will be precluded from offering at trial any *documentary* evidence with respect to Mintz Fraade's termination.

*Finally*, Mintz Fraade seeks to preclude Defendants from offering evidence that it did not perform the legal services that form the basis of its claims for unpaid legal fees. Pl.'s Letter 4-5. Similarly, Mintz Fraade seeks an inference that the documents Defendants failed to produce would be adverse to their allegation that Mintz Fraade did not perform these legal services. *Id.* The Court agrees with Mintz Fraade that Defendants' failure to respond to Request No. 19, concerning a separate Nevada lawsuit, should preclude them from offering evidence that Mintz Fraade did not perform legal services with respect to that litigation. The Court also agrees that documents responsive to Request No. 25, concerning payments made to Mintz Fraade, may have shown that Mintz Fraade rendered particular legal services. Thus, the Court will draw a negative inference that such documents would have been adverse to Defendants' contention that Mintz Fraade did not perform legal services. In asking for more, however, Mintz Fraade is yet again overreaching. It points to Requests Nos. 16 and 17 to justify its requested sanctions, but the connection between these remaining requests and Defendants' allegations regarding Mintz Fraade's failure to provide legal services is weak at best. Request No. 17, for example, concerns Brady's travel to and from New York City; it is speculative to say that "he did so . . . [to] me[e]t with Mintz Fraade," Pl.'s Letter 5, and such documents would have shed little light on whether or not Mintz Fraade performed legal services. Similarly, Request No. 16 covered LTCP's financial statements; it is not clear how these records "would have buttressed Mintz Fraade's claims of the services rendered." *Id.* Thus, the Court refuses to impose further sanctions on this issue.

In addition to the above sanctions, the Court "must order" Defendants to pay Mintz Fraade "reasonable expenses, including attorney's fees, caused by" their failure to obey the October 12th Order. Fed. R. Civ. P. 37(b)(2)(C). Relying on that rule, the Court previously ordered Defendants to pay Mintz Fraade $26,299.90 in fees and costs. *Mintz Fraade*, 2021 WL 621206, at * 7. Since that time, Mintz Fraade's counsel devoted an additional 9.3 hours of time to prepare its most recent submission, which — at the requested $500 per hour — totals $4,650, Pl.'s Letter 5. For the reasons stated in the Court's prior Order, *see Mintz Fraade*, 2021 WL 621206, at *6 n.7, the Court finds these attorney's fees to be reasonable, and Defendants must pay them **no later than two weeks from the date of this Memorandum Opinion & Order**.

One final matter remains. On October 9, 2020, counsel for Defendants filed a motion to withdraw from this case. ECF No. 50. In a prior Order, the Court stated that it was "prepared to grant" that motion after Mintz Fraade's motion for sanctions was resolved. ECF No. 64, ¶ 5. With the sanctions motion now fully resolved, the Court GRANTS Defense counsel's motion to withdraw as it intimated it would. Accordingly, until any new counsel enters an appearance on his behalf, Brady will be deemed to be proceeding *pro se*. Corporate entities, meanwhile, may appear in federal court only through licensed counsel, and repeated failure by counsel to appear on behalf of LTCP may result in a default judgment against it. *See Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006). The Court recently reminded Defendants of this, and cautioned them "that they would be well served to look for, and retain, new counsel now, as the Court [will be] unlikely to give them much time to do so if or when current counsel's motion to withdraw is granted given how long Defendants have already had to find new counsel." *Mintz Fraade*, 2021 WL 621206, at *7 n.8. In light of this warning, **no later than two weeks from the date of this Memorandum Opinion and Order**, new counsel for LTCP must make an

7

appearance; if that deadline passes without any appearance, Mintz Fraade may move for entry of default judgment against LTCP, citing authority in support of the request.

In sum, the Court imposes the following sanctions on Defendants for their failure to comply with its October 12th Order:

- That an inference be drawn that documents responsive to Requests Nos. 14, 16, and 25 would have been adverse to Defendants' allegation that the transfers from the alleged escrow account totaling $40,000 were not authorized;

- That Defendants be precluded from offering any documentary evidence as to Mintz Fraade's termination;

- That Defendants be precluded from offering evidence that Mintz Fraade did not perform legal services as to the Nevada litigation;

- That an inference be drawn that documents responsive to Request No. 25 would have been adverse to Defendants' contention that Mintz Fraade did not perform the legal services that form the basis of Mintz Fraade's claims for legal fees; and

- That Defendants pay an additional $4,650 in attorney's fees **no later than two weeks from the date of this Memorandum Opinion & Order**.

Defense counsel is ORDERED to serve a copy of this Memorandum Opinion & Order on Defendants and file proof of such service on the docket **no later than two business days from the date of this Memorandum Opinion & Order.**

The Clerk of Court is directed to terminate Kudman Trachten Aloe Posner LLP and its lawyers as counsel for Defendants and to terminate ECF No. 50.

SO ORDERED.

Dated: May 4, 2021
New York, New York

JESSE M. FURMAN
United States District Judge