UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
THE MINTZ FRAADE LAW FIRM, P.C.,                :
:
                           Plaintiff,             :
:         19-CV-10236 (JMF)
        -v-                                 :
:         OPINION AND ORDER
FRANK BRADY et al.,                             :
:
                         Defendants.            :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, the Mintz Fraade Law Firm, P.C. ("Mintz Fraade"), a now-defunct New York law firm, sues Life's Time Capsule Services, Inc. ("LTCP") and its principal, Frank Brady, for unpaid legal fees relating to its representation of LTCP. Specifically, Mintz Fraade brings claims for breach of contract, quantum meruit, and unjust enrichment and seeks to recover approximately $240,000 in legal fees from LTCP and Brady. Mintz Fraade also seeks specific performance of LTCP's alleged agreement to issue over sixteen million shares of its common stock to the firm. LTCP counterclaims for disgorgement and forfeiture. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment as to all of Mintz Fraade's claims other than its quantum meruit claim against LTCP. *See* ECF No. 96. Mintz Fraade cross-moves for summary judgment as to its claim for specific performance. *See* ECF No. 108. For the reasons that follow, LTCP's motion for summary judgment is GRANTED in full, and Mintz Fraade's cross-motion for summary judgment is DENIED.

## BACKGROUND

       The relevant facts, taken from the Complaint, ECF No. 5 ("Compl."), and admissible materials submitted in connection with the pending motions, are either undisputed or described

in the light most favorable to the non-moving party.  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

LTCP is a publicly traded company on the Over-the-Counter ("OTC") Markets, formerly known as the "pink sheets."  ECF No. 112, at 1-5 ("Pl.'s Rule 56.1 Resp."), ¶ 1.  During the time period relevant to the claims at issue, Brady was the President and Chief Executive Officer of LTCP.  *Id.* ¶ 2; *see also* ECF No. 95-2 ("First Brady Decl."), ¶ 2.  Beginning in November 2017, Mintz Fraade, a law firm based in New York City at the time, began providing legal services to LTCP.  Pl.'s Rule 56.1 Resp. ¶¶ 3, 5.  Mintz Fraade never provided a written engagement letter to LTCP.  *Id.* ¶ 6.  Nor did it ever ask LTCP to sign one.  *Id.* ¶ 7.

From November 2017 to July 2019, Mintz Fraade represented LTCP in connection with several matters, including unwinding a transaction with another company and a person named Steven Hoffenberg, drafting documents related to other potential transactions, and preparing public securities filings.  *Id.* ¶¶ 5, 12; *see also* ECF No. 109 ("Fraade Decl."), ¶ 31.  Throughout its representation, Mintz Fraade sent LTCP three invoices, dated March 26, 2018, June 1, 2018, and October 26, 2018.  Pls.' Rule 56.1 Resp. ¶¶ 13-14.  Together, these invoices covered LTCP's legal services from November 15, 2017, through May 31, 2018.  *Id.* ¶ 14.[1]  As relevant here, LTCP did not receive any invoices from Mintz Fraade for services rendered from June 1, 2018, to July 31, 2019.  *Id.* ¶ 16.[2]  In total, Mintz Fraade claims that LTCP owes it over $240,000 in fees for services rendered during that time period.  Compl. ¶ 10.

---

[1]  The invoices indicate that Mintz Fraade received payments for at least $75,000 of the fees for the services rendered during this time period.  *See* ECF Nos. 95-3, 95-4.

[2]  Mintz Fraade "[d]enies" this statement, Pl.'s Rule 56.1 Resp. ¶ 16, but it provides no explanation for its denial, *id.*, and elsewhere "admit[s]" that, "[t]hroughout the entire duration of the attorney-client relationship between LTCP and Mintz Fraade, LTCP received *only* three

2

According to Mintz Fraade, sometime in December 2018, Brady "agreed" to "personally . . . mak[e] the payments for the legal services rendered to LTCP" because he "did not anticipate LTCP having available funds to make payments in the foreseeable future." ECF No. 110 ("Mintz Decl."), ¶¶ 22-23; *see also* ECF No. 112, at 5-6 ("Pl.'s COF"), ¶ 6. But Brady never signed — and was never asked to sign — any written guarantee. Pl.'s COF ¶ 8. Nevertheless, Mintz Fraade claims that, beginning in December 2018, Brady made payments to Mintz Fraade from his personal accounts. *See* Mintz Decl. ¶ 23; Fraade Decl. ¶ 7; ECF No. 109-4 ("Brady Dep."), at 57. In total, between December 2017 and July 2019, Mintz Fraade allegedly received $179,500 for legal services rendered to LTCP. Pl.'s Rule 56.1 Resp. ¶ 17. On top of these payments, Mintz Fraade received 5,940,728 shares of LTCP common stock, *id.* ¶ 18, allegedly as "additional compensation" for the firm's work, Fraade Decl. ¶ 10. Mintz Fraade claims that LTCP further "authorized 16,559,272 shares of LTCP to be issued to" Mintz Fraade, *see* ECF No. 113, ¶ 1, "[a]s compensation . . . for accepting late payments," Compl. ¶ 34. Defendants claim otherwise. *See* ECF No. 114 ("Defs.' Resp. to COF"), ¶ 1.

On November 14, 2019, a New York appellate court issued separate orders accepting the resignations of Mintz Fraade's two former named partners, Frederick M. Mintz and Alan P. Fraade, ordering their disbarment, and striking their names from the roll of attorneys and counselors-at-law in New York, "effective nunc pro tunc to July 22, 2019." *Matter of Mintz*, 179

---

invoices from Mintz Fraade" covering legal services rendered from November 15, 2017, to May 31, 2018, *id.* ¶¶ 13-14 (emphasis added). The Court thus treats the assertion as undisputed.

A.D.3d 1, 5 (1st Dep't N.Y. App. Div. 2019) (per curiam); *accord Matter of Fraade*, 179 A.D.3d 6, 10 (1st Dep't N.Y. App. Div. 2019) (per curiam); *see also* Pl.'s Rule 56.1 Resp. ¶ 4.[3]

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (internal

---

[3] Curiously, Mintz Fraade "denies that Mintz's and Fraade's, resignations were nunc pro tunc to July 22, 2019." Pl.'s Rule 56.1 Resp. ¶ 4. But the New York state court opinions are unambiguous. *See Matter of Mintz*, 179 A.D.3d at 5; *Matter of Fraade*, 179 A.D.3d at 10.

quotation marks omitted). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

## DISCUSSION

LTCP and Brady argue they are entitled to summary judgment with respect to Mintz Fraade's claims for (1) breach of contract; (2) unjust enrichment; (3) enforcement of the personal guarantee allegedly made by Brady; (4) specific performance; and (5) quantum meruit as against Brady. *See* ECF No. 96. Mintz Fraade cross-moves for summary judgment with respect to its claim seeking specific performance. *See* ECF No. 108 ("Pl.'s Mot.").[4] The Court will address each claim in turn.[5]

---

[4] Mintz Fraade states that it cross-moves for summary judgment as to its "[f]ourth" cause of action. Pl.'s Mot.; *see* ECF No. 102 ("Pl.'s Opp'n"), at 30; *see also* ECF No. 121 ("Pl.'s Reply"), at 1. Confusingly, however, Mintz Fraade's Complaint contains two "[f]ourth" causes of action, Compl. 3-4, as the claim for "specific performance" is mislabeled as a second "[f]ourth" cause of action, *id*. To avoid confusion, the Court will refer to Mintz Fraade's specific performance claim as its "Fifth Cause of Action."

[5] Defendants also move to strike portions of Mintz Fraade's reply memorandum of law and the entirety of Alan P. Fraade's reply declaration. *See* ECF No. 122. The motion is denied as moot because the Court will simply disregard the portions of the reply memorandum that go beyond the scope of Defendants' opposition to Mintz Fraade's motion for summary judgment, as Mintz Fraade did not ask for, and the Court did not grant, leave for Mintz Fraade to file a sur-reply. Similarly, the Court will disregard the portions of Fraade's reply declaration that are plainly "not based on personal knowledge," *Pacenza v. IBM Corp.*, No. 04-CV-5831 (SCR), 2007 WL 9817926, at *2 (S.D.N.Y. July 26, 2007), *aff'd*, 363 F. App'x 128 (2d Cir. 2010) (summary order), and are "more akin to an adversarial memorandum than a bona fide affidavit," *Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013) (summary order) (internal quotation marks omitted); *see also id.* ("In such circumstances, a court may, in considering a

**A. Breach of Contract**

The Court begins with Mintz Fraade's claim for breach of contract, which it brings against both LTCP and Brady. *See* Compl. ¶ 13. Specifically, Mintz Fraade alleges that Defendants failed to pay approximately $240,000 in legal fees "owing from LTCP to" Mintz Fraade "for services rendered from June 1, 2018, through in or about July 31, 2019," and are therefore in breach of contract. *Id.* ¶ 10; *see also id.* ¶¶ 7-13.

Under New York Law — which both parties agree applies, *see, e.g.*, ECF No. 100 ("Defs.' Mem."), at 1-2; ECF No. 102 ("Pl.'s Opp'n), at 15-16 — "an attorney who undertakes to represent a client" for a fee is required, subject to limited exceptions, to "provide to the client a written letter of engagement" that meets certain specifications. N.Y. Comp. Codes R. & Regs. tit. 22, § 1215.1 ("Section 1215.1"). Attorneys who fail to do so "cannot recover legal fees on a theory of breach of contract." *Sidoti v. Hall*, 124 A.D.3d 760, 761 (2d Dep't N.Y. App. Div. 2015); *see also, e.g.*, *Frechtman v. Gutterman*, 140 A.D.3d 538, 538 (1st Dep't N.Y. App. Div. 2016) ("[P]laintiff has conceded that there was no retainer agreement, and thus, his breach of contract claim fails as a matter of law."). Instead, "in the absence of a letter of engagement," attorneys may seek "*quantum meruit* recovery." *Simon v. Sack*, 451 F. App'x 14, 17 (2d Cir. 2011) (summary order) (collecting cases). Here, Mintz Fraade readily admits that it never provided a written engagement letter to either LTCP or Brady — let alone one that meets the requirements set out in Section 1215.1. *See* Pl.'s Rule 56.1 Resp. ¶¶ 6, 10; *see also* Pl.'s Opp'n 16. Its breach of contract claim is thus squarely foreclosed by New York law.

---

motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." (internal quotation marks omitted)).

Mintz Fraade's counterarguments fail to persuade. It contends that its "representation of LTCP was consonant with [an] . . . exception" to the letter engagement rule set forth in N.Y. Comp. Codes R. & Regs. tit. 22, § 1215.2(b) ("Section 1215.b(2)"). Pl.'s Opp'n 16; *see also id.* 16-18. That Section applies to "representation[s] where the attorney's services are of the same general kind as previously rendered to and paid for by the client." Section 1215.2(b). But Mintz Fraade conspicuously fails to identify any services "rendered to and paid for by the client" — namely *LTCP* — prior to the representation at issue here. *See* Pl.'s Opp'n 16-18. Instead, Mintz Fraade argues that Section 1215.2(b) applies because, prior to representing LTCP, it represented *another* client, Hoffenberg, who allegedly "had the right to control 50% of the issued and outstanding shares of LTCP" and, "for all intents and purposes, [was a] business partner[]" of Brady. *Id.* at 17. According to Mintz Fraade, this means that "Hoffenberg's knowledge of the rates and billing practices of [Mintz Fraade] were imputed to LTCP and Brady" pursuant to Section 1215.2(b). *Id.*

That argument is without merit. First and foremost, it cannot be squared with the plain language of the regulation, which refers to services "previously rendered to and paid for by *the* client." Section 1215.2(b). Nor is it supported by precedent. *See, e.g.*, *Brown Rudnick Berlack Israels LLP v. Zelmanovitch*, 819 N.Y.S.2d 846 (N.Y. Sup. Ct. 2006) (holding that the "exception [under] 22 NYCRR 1251.2" did not apply where "the [previous] services rendered . . . were not paid for by [the client]"); *see also In re Food Mgmt. Grp., LLC*, No. 04-20312 (ASH), 2008 WL 2788738, at *9 n.11 (Bankr. S.D.N.Y. July 16, 2008) (same where there was "no evidence that [the clients] made [the prior] payments"), *appeal dismissed and remanded*, 428 B.R. 576 (S.D.N.Y. 2009), *and aff'd*, 484 B.R. 574 (S.D.N.Y. 2012). The one and only case that Mintz Fraade cites, *Miller v. Nadler*, did not address the plaintiff's Section 1215.2(b) argument

7

in support of its breach of contract claim. *See* No. 0603932/2004, 2007 WL 2815496, at 17-21 (N.Y. Sup. Ct. Aug. 06, 2007),[6] *aff'd*, 60 A.D.3d 499 (1st Dep't N.Y. App. Div. 2009). Instead, the court ruled that the plaintiff could "recover legal fees . . . under *quantum meruit*" and an "account stated." *Id.* at 22. Notably, the section of the opinion upon which Mintz Fraade relies, *see* Pl.'s Opp'n 17-18 (citing *Miller*, 2007 WL 2815496, at 5), was merely summarizing the plaintiff's "[c]ontentions," not articulating the court's own reasoning, as clearly delineated by the headers in the opinion. *Id.* at 1, 9.

In short, given the undisputed facts, Defendants' motion for summary judgment as to the Mintz Fraade's First Cause of Action must be and is GRANTED.

**B. Unjust Enrichment**

Mintz Fraade's claim for unjust enrichment requires only brief discussion. Under New York law, "quantum meruit and unjust enrichment are not separate causes of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). Instead, "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit . . . is one measure of liability for the breach of such a contract." *Id.* As such, courts in this Circuit regularly "analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Id.* (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996)); *see also, e.g.*, *Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284 (JGK), 2021 WL 5491395, at *9 (S.D.N.Y. Nov. 23, 2021) (analyzing unjust enrichment and quantum meruit claims together); *Learning Annex Holdings, LLC v. Rich Glob., LLC*, No. 09-CV-4432 (SAS), 2011 WL 3586138, at *1-2 (S.D.N.Y. Aug. 12, 2011) (same). And courts may

---

[6] The version of *Miller* on Westlaw does not include pagination. Thus, the page numbers cited are references to page numbers in the PDF of the state court decision.

dismiss claims for unjust enrichment at the summary judgment stage as "duplicative" of claims for quantum meruit regarding the same legal fees. *John Harris P.C. v. Tobin*, No. 16-CV-5610 (JGK), ECF No. 102, at 27-28 ("grant[ing] . . . [a] motion for summary judgment dismissing the plaintiff's unjust enrichment claim" because it was "duplicative" of his quantum meruit claim), *aff'd*, 807 F. App'x 20, 24 (2d Cir. 2020).[7]

The Court will follow that course here. As in *John Harris P.C.*, Mintz Fraade's claim for unjust enrichment involves the same "quantum of alleged damages" arising from the same alleged legal work. *Id.* at 28; *see* Compl. ¶¶ 19, 26. It is therefore duplicative of Mintz Fraade's quantum meruit claim and warrants dismissal. *See John Harris P.C.*, No. 16-CV-5610 (JGK), ECF No. 102, at 28. Defendants' motion for summary judgment as to Mintz Fraade's unjust enrichment claim is therefore GRANTED. Going forward, the Court will treat Mintz Fraade's unjust enrichment claim as "part of [its] claim for quantum meruit." *Id*.

## C. Brady's Alleged Personal Guarantee

Next, the Court turns to Mintz Fraade's claim against Brady based on a promise he allegedly made to "personally guarantee[] the payment of the legal fees and expenses owed by LTCP" to the firm. Compl. ¶ 28; *see also id.* ¶¶ 27-32. Mintz Fraade concedes, as it must, that "a 'special promise to answer for the debt, default or miscarriage of another' may not be enforced unless it is in writing." *Martin Roofing, Inc. v. Goldstein*, 60 N.Y.2d 262, 264 (1983)

---

[7] Notably, the cases cited by Mintz Fraade in support of its argument that its unjust enrichment claim may proceed despite its quantum meruit claim, *see* Pl.'s Opp'n 27-28, did not involve claims for both quantum meruit and unjust enrichment, *see Satterlee Stephens Burke & Burke LLP v. Coney on the Park, LLC*, No. 103294/11, 2012 WL 3070821 (N.Y. Sup. Ct. July 17, 2012) (addressing "causes of action sounding in breach of contract, account stated and unjust enrichment"); *Miller v. Nadler*, 60 A.D.3d 499, 499 (1st Dep't N.Y. App. Div. 2009) (affirming denial of motion for summary judgment on claims for "account stated and for quantum meruit").

(quoting N.Y. Gen. Oblig. Law § 5-701(a)(2)); *accord Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp. PLC*, 150 F.3d 194, 195 (2d Cir. 1998). Mintz Fraade also admits that "Brady never signed, nor was asked to sign, any written instrument guaranteeing LTCP's obligation to pay attorneys' fees to Mintz Fraade." Pl.'s Rule 56.1 Resp. ¶ 8. That would seem to be fatal to Mintz Fraade's claim. But the firm argues that Brady's oral promise was taken outside the Statute of Frauds because he "owed . . . an independent duty to pay." *Martin Roofing, Inc.*, 60 N.Y.2d at 264; *see* Pl.'s Opp'n 19. For that exception to apply, however, Mintz Fraade would have to prove that (1) the promise was supported by "new consideration moving to the promisor and beneficial to him" and (2) "the promisor has become in the intention of the parties a principal debtor primarily liable." *Martin Roofing, Inc.*, 60 N.Y.2d at 265; *see also, e.g.*, *Rosenman & Colin LLP v. Sandler*, No. 01-CV-7123 (GEL), 2002 WL 83657, at *5 (S.D.N.Y. Jan. 18, 2002) (Lynch, J.).

Mintz Fraade fails to adduce evidence from which a jury could reasonably conclude that the second requirement of this test is met.[8] For starters, the fact that Mintz Fraade is suing both

---

[8] It is doubtful as well that Mintz Fraade has put forth evidence sufficient to create a triable issue of fact as to the first requirement — that there was "new consideration moving to the promisor and *beneficial to him*." *Martin Roofing, Inc.*, 60 N.Y.2d at 265 (emphasis added). Mintz Fraade's claim that its "continued" work for LTCP suffices because Brady was an officer and shareholder of LTCP at the time, Pl.'s Opp'n 19-21, appears to conflict with the weight of precedent, *see Martin Roofing, Inc.*, 60 N.Y.2d at 266-67; *see also, e.g.*, *Netto v. Rastegar*, No. 12-CV-4580 (CM), 2012 WL 4336167, at *9 (S.D.N.Y. Sept. 20, 2012); *Rosenman & Colin LLP*, 2002 WL 83657, at *5; *Carey & Assocs. v. Ernst*, 27 A.D.3d 261, 263 (1st Dep't N.Y. App. Div. 2006). *But see Concordia Gen. Contracting v. Peltz*, 11 A.D.3d 502, 504 (2d Dep't N.Y. App. Div. 2004). Additionally, although there is a genuine factual dispute as to whether Mintz Fraade rendered additional services to Brady personally, *see* Pl.'s Rule 56.1 Resp. ¶ 9, that dispute does not appear to be material. That is because Mintz Fraade excluded any mention of services rendered to Brady personally in its Complaint and sought only the $240,000 in legal fees "owed by LTCP" in connection with its "personal guarantee" claim against Brady. *See* Compl. ¶¶ 28, 32. Notably, the Court also denied Mintz Fraade leave to amend the Complaint to add in allegations related to services rendered to Brady personally because its motion was, among other things, "blatantly untimely." ECF No. 118 ("Oct. 21, 2020 Tr."), at 4-6. That said, the Court

LTCP *and* Brady makes any oral promise made by the latter to assume the former's liability presumptively unenforceable. *See Hawley Fuel Coalmart, Inc. v. Steag Handel GmbH*, 796 F.2d 29, 33 (2d Cir. 1986); *Martin Roofing, Inc.*, 60 N.Y.2d at 267-68. Indeed, both the Second Circuit and the New York Court of Appeals have deemed oral promises unenforceable where "there [was] nothing to suggest . . . discharge" of the original debtor and where the plaintiff had in fact previously sued the original debtor. *Hawley Fuel Coalmart, Inc.*, 796 F.2d at 33; *see Martin Roofing, Inc.,* 60 N.Y.2d at 267-68 (stating that "[o]bviously the [original debtor's] debt was not discharged by the promise here because plaintiff sued the [original debtor] on it" in an earlier suit, and concluding "the evidence supports the . . . finding that these parties assumed that the corporation was to remain liable," rendering the oral promise unenforceable); *see also, e.g.*, *Netto v. Rastegar*, No. 12-CV-4580 (CM), 2012 WL 4336167, at *9 (S.D.N.Y. Sept. 20, 2012) (holding an oral promise unenforceable where the plaintiff had "asserted a claim [for the same amount] against [the original debtor] in [a] bankruptcy proceeding"); *Indus. Acoustics Co. v. Energy Servs., Inc.*, No. 93-CV-2865 (SAS), 1995 WL 274416, at *6 (S.D.N.Y. May 9, 1995) (same where the plaintiff "insist[ed] that . . . any promise made by [the third party] did not discharge [the original debtor's] obligations"). Here, of course, Mintz Fraade is suing LTCP for the exact same legal fees for which it sues Brady. *See* Compl. ¶¶ 13, 19, 26, 32. In fact, Mintz Fraade explicitly states that it sues Brady for "legal fees and expenses owed *by LTCP* to" Mintz Fraade. *Id.* ¶ 28 (emphasis added). It follows, therefore, that any oral promise Brady may have made to assume LTCP's debts is "presumptively . . . unenforceable." *Martin Roofing, Inc.*, 60 N.Y.2d at 267.

---

need not and does not resolve these issues because Mintz Fraade has plainly failed to raise a genuine dispute of material fact as to the second requirement.

11

In any event, even without any such presumption, Mintz Fraade has failed to adduce sufficient evidence to satisfy the second prong of the test. Importantly, the New York Court of Appeals has held that evidence of statements made by a defendant promising to "[']guarantee payment' . . . unmistakably indicates [the defendant's] intention to become a surety" (i.e., to answer for the debt of another), *not* to become primarily liable for the debt. *Witschard v. A. Brody & Sons*, 257 N.Y. 97, 99 (1931) (holding that the oral promise in question was unenforceable under the Statute of Frauds); *see Martin Roofing, Inc.*, 60 N.Y.2d at 268 (concluding that the defendant did not intend to become primarily liable because, among other things, "[t]he language used, as plaintiff stated it, indicated that it was [a] 'guarantee', i.e., that defendant was acting as a surety 'to make sure you [plaintiff] get paid'"); *see also, e.g.*, *Am. Steel Erectors, Inc. v. Lehrer McGovern Bovis, Inc.*, No. 94-CV-6253 (LAK), 1997 WL 122761, at *4 (S.D.N.Y. Mar. 18, 1997) (concluding defendant's "guarantee[] that if [the original debtor] did not pay . . . [the defendant] would do so," was a "clear[] example of a special promise to answer for the debt of another," and holding "no reasonable trier of fact could conclude" the defendant intended to become primarily liable). It follows that, without more, evidence that Brady agreed to "personally guarantee[] the payment" of legal fees incurred by LTCP, Compl. ¶ 28, is insufficient to establish he intended to become primarily liable for LTCP's debts.

Mintz Fraade points to nothing more. Conspicuously, Mintz Fraade points to no evidence of any statement made by Brady indicating that he intended to become primarily liable. *See* Pl.'s Opp'n 22-23. In fact, during Brady's deposition, Mintz Fraade's counsel never even asked Brady if he had agreed to become primarily liable for (or even "guarantee") LTCP's debts

12

— or if he had any conversation with anyone that might have suggested as much.[9] *See* Brady Dep. 1-72; *see also id.* at 56-60 (asking instead whether there ever "c[a]me a time where [Brady] paid Mintz Fraade personally"). Instead, Mintz Fraade relies on evidence that Brady agreed to, and did in fact, make payments to Mintz Fraade while "LTCP [did not have] available funds." Mintz Decl. ¶ 22. For instance, Frederick Mintz avers that, in December 2018, "Brady . . . agreed . . . that he would personally be making the payments for the legal services rendered to LTCP" because "he did not anticipate LTCP having available funds to make payments in the foreseeable future." *Id.* ¶¶ 21-23. Mintz Fraade also points to evidence that "Brady personally made all of the payments from December 14, 2018[,] to July 10, 2019 . . . directly to [Mintz Fraade]"; that those payments were not reflected "in the books of LTCP"; and that LTCP itself "made no [further] payments" to Mintz Fraade. Mintz Decl. ¶ 23; *see also* Brady Dep. 56-57 (admitting "[s]ome" payments "came from [his] . . . accounts"). But evidence that Brady agreed to, and did, make personal payments to Mintz Fraade for services rendered to LTCP (and that LTCP thereafter stopped paying Mintz Fraade), without more, is not sufficient for a jury to reasonably find that Brady intended to become "primarily liable" for LTCP's debts. *Martin Roofing, Inc.*, 60 N.Y.2d at 265; *see, e.g.*, *Carey & Assocs.*, 27 A.D.3d at 264 (concluding evidence that the defendant, rather than the clients, had "paid many of the firm's bills" did not amount to "evidence that the parties intended that [the defendant] would become primarily liable"). If anything, Brady's alleged promise to "personally . . . mak[e] the payments" to Mintz Fraade, Mintz Decl. ¶ 23, indicates an "intent[] to become a surety" rather than an intent to be

---

[9]     It is hard to avoid the conclusion that this was a strategic omission on Mintz Fraade's part. In a later-filed declaration, Brady adamantly denies that he ever "agreed to become primarily responsible for LTCP's legal fees" either "orally" or "in writing." ECF No. 115, ¶ 11.

primarily liable for LTCP's debt, *Witschard*, 257 N.Y. at 99; *see also, e.g.*, *Am. Steel Erectors, Inc.*, 1997 WL 122761, at *4; *Martin Roofing, Inc.*, 60 N.Y.2d at 268.

Mintz Fraade's only other evidence regarding Brady's alleged promise — an email from an LTCP employee — actually reinforces the conclusion that Brady never intended to become primarily liable. *See* Pl.'s COF, ¶ 6 (citing ECF No. 109-12 ("McDaniel Email")). In a December 5, 2018, email sent from Launie McDaniel, LTCP's Chief Financial Officer, *see* Pl.'s Opp'n 9, to Frederick Mintz and Alan Fraade, copying Brady, McDaniel states: "Paying your invoices was never in question, as I am sure you can attest, with all the payments Frank [Brady] has made directly to you. We are hoping the incoming funds would handle the rest, and therefore *relieve the financial demands on Frank*." McDaniel Email (emphasis added). That language suggests there was an understanding between the relevant parties that Brady was only personally making payments to Mintz Fraade temporarily while LTCP did not have adequate funds rather than serving as a "principal debtor primarily liable" who would be "under a duty to pay irrespective of the liability of [LTCP]." *Martin Roofing, Inc.*, 60 N.Y.2d at 265, 267. The summary judgment record developed by Mintz Fraade is thus insufficient as a matter of law for a jury to reasonably conclude that Brady's oral promise is enforceable.

*Concordia General Contracting v. Peltz*, 11 A.D.3d 502 (2d Dep't N.Y. App. Div. 2004) — the only case Mintz Fraade cites in support of its argument that Brady intended to become primarily liable, *see* Pl.'s Opp'n 22 — does not suggest otherwise. For starters, the defendant in that case, unlike Brady, had "admi[tted] [to] the existence and essential terms of the oral agreement," which "was sufficient to take the agreement outside the scope of the Statute of Frauds." *Concordia*, 11 A.D.3d at 503 (cleaned up)). Additionally, it was undisputed that the defendant there had orally promised to "pay [plaintiff] directly for *all future work*, as well as pay

14

*all outstanding sums* for past work performed," *id.* (emphases added), which led the Court to conclude that "the defendant . . . intended to become primarily liable for the general contractor's debt, and did not intend to act merely as a surety for the general contractor's benefit." *Id.* at 504 (citations omitted). Here, by contrast, Mintz Fraade has proffered no evidence that Brady ever promised to pay the firm directly for "all future work" or to pay "all outstanding sums" owed by LTCP. *Id.* at 503; *see* Pl.'s Opp'n 22-23; Pl.'s COF ¶ 6. To the contrary, as discussed, the firm's own evidence indicates Brady merely intended to cover Mintz Fraade's payments while LTCP had insufficient funds. *See* Mintz Decl. ¶¶ 22-23; McDaniel Email. Without evidence that Brady intended to undertake "a duty to pay irrespective of the liability of [LTCP]," *Martin Roofing, Inc.*, 60 N.Y.2d at 267, Mintz Fraade has thus failed to create a genuine dispute as to the enforceability of Brady's oral promise, *see, e.g.*, *Am. Steel Erectors, Inc.*, 1997 WL 122761, at *4 (granting summary judgment on these grounds).

Mintz Fraade's alternative argument — that Brady's oral promise is enforceable under the doctrine of promissory estoppel, *see* Pl.'s Opp'n 23-27 — is plainly meritless. Promissory estoppel, another exception to the Statute of Frauds under New York law, "requires a plaintiff to prove three elements: '(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance.'" *Aleem v. Experience Hendrix, L.L.C.*, 413 F. Supp. 3d 251, 259 (S.D.N.Y. 2019) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)). Mintz Fraade has failed to put forth evidence from which a jury could reasonably conclude Brady made a "clear and unambiguous promise" to pay Mintz Fraade for all legal services rendered to LTCP (plus expenses) from June 1, 2018, to July 31, 2019. Indeed, the only alleged oral promise that comes close was Brady's purported agreement in *December* 2018 to "personally . . . mak[e] the

15

payments for the legal services rendered to LTCP," without any specifics regarding primary liability, outstanding fees, or how many future payments (if any) Brady would cover permanently as opposed to temporarily while LTCP lacked the funds, Mintz. Decl. ¶ 23. Additionally, in any event, Mintz Fraade has not alleged — let alone put forward sufficient facts for a reasonable jury to conclude — that it suffered an "'unconscionable' injury, i.e., injury beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *Aleem*, 413 F. Supp. 3d at 261. Indeed, Mintz Fraade does not even allege that it suffered injury beyond the $240,000 in legal fees (plus expenses) that Brady purportedly promised to pay, *see* Compl. ¶¶ 27-32. It has therefore failed to substantiate an "unconscionable injury." *Aleem*, 413 F. Supp. 3d at 261; *see also* ECF No. 118, at 6 (denying leave to amend because "promissory estoppel cannot be invoked absent a showing of 'unconscionable injury,' and plaintiff does not allege that in the amended complaint").

In short, Defendants are entitled to summary judgment with respect to Mintz Fraade's claim against Brady based on his alleged promise to serve as personal guarantor.

### D. Specific Performance

Mintz Fraade's next claim — for "specific performance" of LTCP's alleged "agree[ment] to issue to [Mintz Fraade] 16,559,272 shares of Common Stock of LTCP," Compl. ¶¶ 34, 41 — can be swiftly rejected. "[S]pecific performance is an equitable remedy for a breach of contract, rather than a separate cause of action." *Rhodes v. Davis*, 628 F. App'x 787, 791 (2d Cir. 2015) (summary order) (quoting *Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 112 A.D.3d 78, 86 (1st Dep't N.Y. App. Div. 2013)); *Judnick Realty Corp. v. 32 W. 32nd St. Corp.*, 61 N.Y.2d 819, 823 (N.Y. Ct. App. 1984) (recognizing claims for specific performance and breach of contract as "both being in affirmance of the contract"). As such, any argument that

LTCP owes Mintz Fraade the shares as part of its "compensation" for legal services, *see* Pl.'s Opp'n 30, fails for the same reasons that Mintz Fraade's breach of contract claim fails.[10]

Mintz Fraade's alternative argument — that LTCP made a separate agreement to issue the shares as a "bonus," Pl.'s Opp'n 31 — likewise fails. "The law is well settled that in order for a promise to be enforceable as a contract, the promise must be supported by valid consideration." *Greenberg v. Greenberg*, 646 F. App'x 31, 32 (2d Cir. 2016) (summary order). "Generally, past consideration is no consideration." *Greenberg*, 646 F. App'x at 32. Here, however, the only potential consideration is past consideration. Specifically, Mintz Fraade claims that the shares were "voluntarily offered as a bonus to [it] primarily for the results obtained in the Hoffenberg disengagement from LTCP." Pl.'s Opp'n 31, *see also id.* at 31-32; Pl.'s Reply 8. Those "results," however, had already been obtained prior to LTCP's alleged promise and, therefore, as a matter of law cannot be said to have "induce[d] the promise." *Greenberg*, 646 F. App'x at 32; *see* Pl.'s Opp'n 31; Mintz Decl. ¶¶ 16-17. Nor does Mintz Fraade argue that any exceptions to the general rule that "past consideration is no consideration" apply. *See* Pl.'s Opp'n 30-35; Pl.'s Reply 2-10.

In fact, Mintz Fraade contends that "arguments regarding the topic of past consideration do not apply, . . . since the shares were authorized voluntarily, not contractually." Pl.'s Reply 9. But that argument merely underscores the fatal defect in Mintz Fraade's claim for specific

---

[10] In its Complaint Mintz Fraade also alleges that the shares were issued "[a]s compensation . . . for accepting late payments." Compl. ¶ 34. But Mintz Fraade did not advance, or provide any support for, that argument in their opposition to Defendants' motion for summary judgment. *See* Pl.'s Opp'n 30-35. Accordingly, the Court deems any such argument abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (noting "a partial opposition may imply an abandonment of some claims or defenses" and that "[w]here abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended").

17

performance. As noted, without a valid contract on which to base a claim for specific performance, Mintz Fraade has no claim at all. *See Rhodes*, 628 F. App'x at 791; *see also, e.g.*, *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (noting that the specific performance claim would only be viable "assuming a jury finds [the defendant] liable for breach of contract"); *Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 293 (S.D.N.Y. 2017) ("For the plaintiff to justify his entitlement to specific performance, he must first establish the existence of a contract with the defendants." (cleaned up)); *Edge Grp. WAICCS LLC v. Sapir Grp. LLC*, 705 F. Supp. 2d 304, 312 (S.D.N.Y. 2010) (same). Based on the undisputed facts, therefore, Mintz Fraade's claim for specific performance fails as a matter of law. Accordingly, Defendants are granted summary judgment on the claim, and Mintz Fraade's cross-motion for summary judgment on the claim is denied.

### E. Quantum Meruit Against Brady

Finally, Mintz Fraade's quantum meruit claim against Brady individually also falls short. *See* Compl. ¶ 19. Notably, Mintz Fraade does not seek to recover any legal fees for services that it allegedly rendered to Brady personally pursuant to its quantum meruit claim. *See* Compl. ¶¶ 14-19. Instead, Mintz Fraade seeks to recover the same $240,000 plus expenses that it alleges is "currently due and owing from *LTCP* to [Mintz Fraade], for services rendered from June 1, 2018 through in or about July 31, 2019." *Id.* ¶ 10 (emphasis added); *see id.* ¶ 19. Because Mintz Fraade seeks to recover legal fees from a party for whom it never performed legal services, its quantum meruit claim against Brady fails as a matter of law. *See, e.g.*, *John Harris P.C.*, 807 F. App'x at 24 (affirming dismissal of a quantum meruit claim against an entity where the plaintiff had failed to "put forth any evidence that it had performed any legal work for that entity"); *see also Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457 (1989) (noting that, pursuant

to a quantum meruit claim, "the attorney is entitled to recover compensation *from the client* measured by the fair and reasonable value of the services rendered" (emphasis added)).

The evidence put forth by Mintz Fraade that it did in fact provide legal services to Brady personally, *see* Pl.'s Opp'n 5-6, is of no moment. As noted, this Court previously denied Mintz Fraade's motion for leave to amend its Complaint to include legal fees allegedly incurred by Brady personally in its quantum meruit claim. *See* Oct. 22, 2020 Order (ECF No. 64); Oct. 21, 2020 Tr. 4-7; ECF No. 44-5, ¶¶ 27-32. Thus, any disputes as to Mintz Fraade's representation of Brady personally in connection with its quantum meruit claim are immaterial. The Complaint remains the operative pleading, and Mintz Fraade cannot circumvent the Court's October 22, 2020 Order by introducing evidence to support an amended version of its quantum meruit claim that the Court denied Mintz Fraade leave to pursue. *See* Oct. 21, 2020 Tr. 4-7. Mintz Fraade has therefore failed to create a genuine dispute of material fact as to its claim against Brady to recover in quantum meruit for LTCP's unpaid legal fees.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED in full, and Mintz Fraade's cross-motion for summary judgment is DENIED. More specifically, Defendants' motion for summary judgment is GRANTED as to Mintz Fraade's First, Third, Fourth, and Fifth Causes of Action, and as to Mintz Fraade's Second Cause of Action against Brady personally. What remains is Mintz Fraade's Second Cause of Action against LTCP for recovery of unpaid legal fees in quantum meruit and LTCP's counterclaims for disgorgement and forfeiture.

Unless and until the Court orders otherwise, the parties shall submit a proposed joint pretrial order and associated materials (in accordance with Section 5 of the Court's Individual

Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Opinion and Order**. The Court will schedule a pretrial conference after reviewing the parties' submissions to discuss the procedures for and timing of trial in light of, among other things, the COVID-19 pandemic.

In the meantime, and mindful of the amount in controversy, the Court is firmly of the view that the parties should try to settle this case without the need for an expensive and potentially risky trial. To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and about conducting a settlement conference before the designated Magistrate Judge (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF Nos. 96 and 108.

SO ORDERED.

Dated: April 15, 2022
      New York, New York

                                                  JESSE M. FURMAN
                                          United States District Judge